# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DESHAWN RAMON THREATS,

        Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No. 323097
Kent Circuit Court
LC No. 13-010185-FC

Before: OWENS, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of first-degree felony murder, MCL 750.316(1)(b). He was sentenced as an habitual offender, second offense, MCL 769.10, to life imprisonment without parole. Defendant appeals as of right. Because the evidence was sufficient to support defendant's conviction, the trial court did not abuse its discretion by admitting evidence of defendant's prior bad acts and evidence of the victim's prior injuries, and there was no prosecutorial misconduct during closing arguments, we affirm.

The victim in this case was defendant's two-year-old daughter, Zaeyana, who died as a result of injuries sustained while in defendant's exclusive care in August of 2013. Dr. Stephen Cohle, an expert in forensic pathology, conducted the victim's autopsy. At trial, Dr. Cohle testified that, during the autopsy, he observed a large number of injuries on the victim, including scrapes and lacerations on the victim's head, face, back, a tear to the frenulum, i.e., the tissue that connects the lip to the gums, bruising on the victim's jaw, lower abdominal area, knees, back, scalp, and arms, bruising to the victim's pancreas, a laceration to the victim's diaphragm, and a "tension pneumothorax," which is an injury that allows air to enter the lungs but prevents the air from escaping. Perhaps most notably, Dr. Cohle testified that the victim's stomach had been ruptured and that there were food materials outside of the stomach, on the surface of the diaphragm and in the space around the left lung. In Dr. Cohle's expert opinion, blunt abdominal trauma caused the stomach to tear and subsequent breathing caused the gastric contents to be inhaled into the lung cavity. Cohle opined that the injuries in question would require "a severe amount of force," such as "an adult size person . . . striking the child in the abdomen with a great deal of force." Dr. Cohle explained that the distribution and number of injuries, the degree of force necessary to cause the injuries, and the lack of viable accidental explanation for the injuries demonstrated that the victim's injuries had been inflicted by someone else. Ultimately, Dr.

-1-

Cohle opined that the cause of death was blunt abdominal trauma and that the manner of death was homicide.

At trial, defense counsel conceded that "someone" caused the victim's injuries, but the defense theory was that defendant was not the cause. The jury found defendant guilty of first-degree felony murder with first-degree child abuse as the underlying felony. The trial court sentenced defendant as noted above. Defendant now appeals as of right.

Defendant first challenges the sufficiency of the evidence. In particular, defendant does not dispute that the victim died as a result of physical abuse inflicted by an adult as generally described by Dr. Cohle. Rather, defendant claims that there was insufficient evidence to prove that defendant committed the abuse in question. Defendant notes that no one saw defendant harm the victim and that the testimony establishing that defendant had sole care of the victim during the relevant time came mainly from Darci Driggs, who was his girlfriend and Zaeyana's mother. Defendant downplays the significance of this testimony, characterizing Driggs's testimony as "the type of self-serving testimony one would expect Driggs to offer" if she was the culprit.

We review a challenge to the sufficiency of the evidence de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This Court will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence, and the elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (internal citations omitted).

"The elements of felony murder are (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony." *Lane*, 308 Mich App at 57-58. First-degree child abuse is an enumerated felony, and "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." *Id.*, quoting MCL 750.136b(2). In addition, "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

In this case, contrary to defendant's arguments, the evidence introduced at trial was sufficient to establish defendant's identity as the individual who abused and ultimately killed the victim. The evidence introduced at trial established that the victim was found dead in her bedroom on the morning of August 14, 2013. Driggs testified that the previous day, on August 13, 2013, she was at home between 2:00 and 4:40 p.m., at which time Driggs left to go to work, leaving the victim, along with two other small children, in defendant's sole care. According to Driggs, before she left for work, the victim was acting "completely normal." The victim was in bed when Driggs returned home from work at approximately 11:50 p.m., and Driggs testified that she did not go into the victim's room that night. The following morning, defendant found the victim dead in her bedroom. Given Driggs's testimony that the victim appeared completely

-2-

normal before Driggs left for work, the jury could reasonably infer that defendant, who had the sole care of the victim thereafter, caused the injuries leading to her death. Although defendant characterizes Driggs's testimony as "self-serving," the credibility of her testimony was an issue for the jury, not this Court. See *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

Moreover, as noted, during the autopsy, Dr. Cohle found food material outside of the stomach, on the surface of the victim's diaphragm. Based on this finding and the length of time it takes for food to pass from the stomach to the small intestine, Cohle opined that the victim consumed food within approximately two hours before the assault. Cohle further testified that "roughly two hours, one to three is a good range" of the time it takes for food to pass from the stomach into the small intestine. In a statement to police, defendant indicated that he last fed the victim at about 6:00 p.m. Given this statement and Cohle's expert testimony, a jury could reasonably infer that the fatal blows to the victim's stomach occurred between 7:00 p.m. and 9:00 p.m., while Driggs was at work and the victim was in defendant's sole care. Based on this evidence, especially when coupled with Driggs's testimony, the jury could reasonably conclude that the victim was in defendant's sole care when she was abused and that, as the only adult with access to the victim, defendant inflicted the fatal injuries. Thus, viewing this evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find that defendant's identity was proven beyond a reasonable doubt. See *Lane*, 308 Mich App at 57.

Next, defendant argues that evidence regarding defendant's prior acts of domestic violence was irrelevant and unfairly prejudicial, and that its admission denied him the right to a fair trial. Specifically, at trial, relying on MCL 768.27b, the prosecution introduced evidence of domestic violence perpetrated by defendant against Driggs and against Kassie White, defendant's former girlfriend and a woman with whom defendant had a child. Relying primarily on *People v Knox*, 469 Mich 502; 674 NW2d 366 (2004), defendant argues that this evidence was irrelevant and unfairly prejudicial in large part because it involved violence directed at adult women, rather than a child such as the victim. Given these dissimilarities, defendant maintains the evidence was inflammatory and it unfairly encouraged the jury to convict defendant merely because he was an abusive person with a history of domestic violence.

We review a trial court's evidentiary decision for an abuse of discretion. *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). A trial court's decision is an abuse of discretion when the court "chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). When an evidentiary decision involves a preliminary question of law, such as whether a rule of evidence precludes admission, we review the question de novo. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). To the extent defendant raises a constitutional challenge regarding his right to a fair trial, defendant's claim is unpreserved and reviewed for plain error affecting his substantial rights. See *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003).

Evidence of defendant's past acts of domestic violence was admitted under MCL 768.27b(1), which states:

> Except as provided in subsection (4), in a criminal action in which the defendant
> is accused of an offense involving domestic violence, evidence of the defendant's

-3-

commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

This provision "reflects a policy decision that, in certain cases, juries should have the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords." *People v Schultz*, 278 Mich App 776, 779; 754 NW2d 925 (2008) (quotation marks and citation omitted). "The language of MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove *any* issue, even the character of the accused, if the evidence meets the standard of MRE 403." *Cameron*, 291 Mich App at 609 (quotation marks and citation omitted) (emphasis added). Consequently, evidence of prior domestic violence may be admissible under MCL 768.27b "to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). This type of evidence may also be used to shed light on the likelihood that a given crime was committed and it may be relevant to the assessment of witness credibility. See *Cameron*, 291 Mich App at 610, 612.

In this case, defendant was accused of an offense involving domestic violence against Zaeyana, and his past acts of violence against Driggs and White constituted acts of domestic violence. See MCL 768.27b(5). These previous acts of violence included evidence that defendant (1) choked and punched Driggs while she was pregnant in November of 2010, (2) punched Driggs and grabbed her around the neck in December of 2010, (3) punched Driggs and grabbed her around the throat in March of 2012, (4) pulled Driggs's hair out of her head, prompting Driggs to seek a personal protection order, (5) burned Driggs's car in December of 2010, and (6) punched White in November of 2010. These previous acts of domestic violence were relevant to show defendant's propensity to commit the instant act of domestic violence, *Railer*, 288 Mich App at 219-220, to afford the jury the opportunity to weigh defendant's behavioral history and view the case's facts in the larger context that defendant's background affords, *Schultz*, 278 Mich App at 779, and to aid the jury's assessment of Driggs's credibility, see *Cameron*, 291 Mich App at 612. These prior acts of domestic violence, which demonstrate defendant's tendencies to violently assault "family or household members," have a tendency to make it more probable that defendant punched or used another type of forceful blow to hit the victim's stomach, which resulted in her death. See *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012) ("[A] defendant's propensity to commit a crime makes it more probable that he committed the charged offense."). Therefore, contrary to defendant's arguments on appeal, the evidence was relevant.

Though relevant, the evidence must still be evaluated under MRE 403. See MCL 768.27b(1). "Relevant evidence may be excluded under MRE 403 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *People v Meissner*, 294 Mich App 438, 451; 812 NW2d 37 (2011), quoting MRE 403. Danger of unfair prejudice exists when "*marginally* probative evidence will be given undue or preemptive weight by the jury." *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010) (citation and quotation marks omitted). Notably, because MCL 768.27b allows evidence to be used for propensity purposes, when applying the MRE 403 balancing test in the context of MCL 768.27b, "courts must weigh the propensity inference in favor of the evidence's

probative value rather than its prejudice effect." *Watkins*, 491 Mich at 487. When assessing whether the evidence should be excluded under MRE 403, courts may consider a variety of factors, including:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

Considering these factors, we conclude that the trial court did not abuse its discretion by admitting the evidence in question. Contrary to defendant's arguments on appeal, unlike in *Knox*, which was decided before the enactment of MCL 768.27b, any propensity inference arising from the evidence weighs in favor of its admission, not against. See *Watkins*, 491 Mich at 487-488. Further, the age of White and Driggs compared to Zaeyana, did not render the acts dissimilar as to require exclusion under MRE 403. Rather, fairly considered, defendant's various past acts showed a pattern of violence and particularly a pattern of striking household members, and Zaeyana suffered blows to her abdomen as well as bruising to her face and head while in defendant's care. Given the similarity of the acts, the age of the respective victims did not require exclusion under MRE 403.[1] Cf. *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007) (finding evidence of sexual assault against the defendant's ex-fiancée admissible under MCL 768.27b in a case involving sexual assault of the defendant's daughter). Regarding the other factors set forth in *Watkins*, defendant's other acts of domestic violence occurred in close temporal proximity to the charged conduct, the acts were fairly frequent, and there is no indication of any intervening acts. We see nothing to undercut the reliability of this evidence, and, given that Zaeyana was dead and no one witnessed the fatal blows, there was clearly a need for evidence beyond that offered by the complainant and defendant. See *Watkins*, 491 Mich at 487-488.

Further, there is also no indication that this evidence was given preemptive weight by the jury. The witnesses' descriptions of the previous acts of domestic violence were brief and did not go into the details of defendant's actions. Thus, the use of the evidence was not inflammatory. Cf. *Railer*, 288 Mich App at 220-221. Moreover, the trial court gave a limiting instruction that the jury must not convict defendant solely because it thought defendant was

---

[1] We note that, although defendant's burning of Driggs's car can be seen as an act of domestic violence within the meaning of MCL 768.27b(5)(*iv*), this act was dissimilar to the charged conduct to the extent that, during that episode, defendant's violence was directed toward a vehicle rather than household members. Nevertheless, even supposing that this evidence in particular should have been excluded under MRE 403, given the other acts of domestic violence properly admitted at trial, and the other evidence of defendant's guilt, any error in the admission of this evidence was not outcome determinative. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

guilty of other bad conduct for which he was not on trial. This limiting instruction lessened the potential for prejudice because "jurors are presumed to follow their instructions." *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53 (2010). Overall, the trial court did not abuse its direction by admitting evidence of defendant's prior acts of domestic violence under MCL 768.27b. Further, because there was no error in the admission of this evidence, there was no plain error with respect to defendant's constitutional argument that the admission of this evidence denied him a fair trial. See *Bulmer*, 256 Mich App at 35.

Next, defendant argues that Dr. Cohle's testimony about the victim's healing rib fracture was inadmissible and that the admission of the evidence, particularly in light of the prosecutor's arguments during rebuttal, denied him the right to a fair trial. As noted *supra*, we review a trial court's evidentiary decision for an abuse of discretion. *Cameron*, 291 Mich App at 608. Further, to the extent defendant argues that admission of the evidence denied him a fair trial, we review this unpreserved issue for plain error. *Bulmer*, 256 Mich App at 35.

"Generally, evidence underlying the basis of an expert opinion is admissible." *People v Pickens*, 446 Mich 298, 334-335; 521 NW2d 797 (1994), citing MRE 703 and MRE 705. However, the evidence must be relevant and it is subject to MRE 403. See *id.* at 335-336. Often times evidence underlying an expert's opinion is relevant because "it places the expert's opinions into a factual context, thereby enabling the trier of fact to determine the weight due an expert's opinion." *Id.* at 335. Moreover, in child abuse cases in particular, signs of past physical abuse of the child may be relevant to prove that the child's subsequent fatal injuries were not inflicted accidentally. *Knox*, 469 Mich at 513. Although evidence of prior injuries may be relevant for this purpose, if there is no evidence that the defendant committed prior acts of abuse against the child, the prosecutor may not argue that the earlier events were abusive or that the defendant caused those prior injuries. See *id.*

Here, during the autopsy, Dr. Cohle noted that the victim had a rib fracture that appeared to be approximately two weeks old and that was in the process of healing. The trial court admitted evidence of this prior rib injury, subject to a cautionary instruction, because the past rib injury "was part of the autopsy report and it was part of the totality of the circumstances from which experts derive the conclusion that the child was the victim of child abuse." Given Dr. Cohle's testimony regarding the injury, we can discern no abuse of discretion in the trial court's decision. Specifically, the rib injury informed Dr. Cohle's conclusion that Zaeyana had been subjected to child abuse causing her death because, as Dr. Cohle explained, in combination with other older injuries and the specific injuries that caused the victim's death, the rib injury suggested "a pattern of consistent abuse." Because the rib injury formed part of the basis for Dr. Cohle's expert opinion and this injury made it more probable that Zaeyana's fatal injuries were not inflicted accidentally, the evidence was relevant. See MRE 401; *Knox*, 469 Mich at 513; *Pickens*, 446 Mich at 334-335.

With respect to MRE 403, the evidence was more than marginally probative, and there was no indication that it was given preemptive weight by the jury. *Feezel*, 486 Mich at 198. Moreover, the trial court gave a limiting instruction regarding the rib injury, instructing the jury

that "[t]here is no evidence that the prior broken rib was inflicted as a result of a criminal act as opposed to an accident or, if it was inflicted by a criminal act, who may have done it."[2] This limiting instruction lessened the potential for prejudice because "jurors are presumed to follow their instructions." *Mann*, 288 Mich App at 118. Overall, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *Feezel*, 486 Mich at 198. Consequently, the trial court's decision to admit evidence of the healing rib injury was within the range of principled outcomes, and this decision was not an abuse of discretion. *Waclawski*, 286 Mich App at 670. Given that this evidence was properly admitted, defendant was not denied a fair trial, and there was no plain error in this respect. See *Bulmer*, 256 Mich App at 35.

Further, even if there were some error in the admission of evidence regarding the victim's healing rib fracture or the prosecutor's comments thereon, it did not result in a miscarriage of justice. See MCL 769.26. The evidence clearly demonstrated that defendant was the only adult who had contact with the victim during the timeframe when the fatal injuries were inflicted. Further, defendant's prior acts of domestic violence were admissible as discussed *supra*, and this evidence provided further support for defendant's guilt. Given the evidence presented, there is not a reasonable probability that this alleged error was outcome determinative. See *Lukity*, 460 Mich at 493-496.

Finally, defendant argues that the prosecutor misstated the evidence during closing arguments with respect to Dr. Cohle's testimony on the timeline for digestion and that, in the alternative, defense counsel was ineffective for failing to object. Because this claim of prosecutorial misconduct is unpreserved, we review the issue for plain error affecting defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Defendant's claim of ineffective assistance of counsel is also unpreserved, and thus our review is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"Prosecutors . . . have a duty to see that defendants receive a fair trial while attempting to convict those guilty of crimes." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). Nonetheless, "a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). "But the prosecutor may

---

[2] We note that, during rebuttal argument, the prosecutor alluded to defendant injuring Zaeyana in the past "when no one was around," despite the fact that there was no evidence establishing that defendant caused the rib injury. Cf. *Knox*, 469 Mich at 513. Defense counsel promptly objected and the prosecutor immediately clarified, in front of the jury, that she did not mean to suggest that defendant broke Zaeyana's rib. Indeed, elsewhere, the prosecutor expressly acknowledged that she could not prove who broke Zaeyana's rib. On this record, particularly in light of the trial court's limiting instruction, the prosecutor's comment did not deprive defendant of a fair and impartial trial, and defendant is not entitled to relief. See *Mann*, 288 Mich App at 119, 122.

argue reasonable inferences arising from the evidence to the extent that the inferences relate to the prosecutor's theory of the case." *Lane*, 308 Mich App at 67.

Here, during closing arguments, the prosecution asserted that Dr. Cohle found food on the victim's diaphragm, that the stomach empties in three hours, and that, based on the timeline for digestion and the victim's consumption of food at 6:00 p.m., the fatal trauma occurred by 9:00 p.m., before Driggs returned home. Defendant argues on appeal that this argument was a misstatement of the evidence because "Dr. Cohle did not testify that consumed food empties from the stomach within three hours of consumption" and the record is missing testimony on how long food remains in "the stomach or large intestine before moving into the small intestine." Contrary to defendant's argument, Dr. Cohle specifically testified as follows:

> [G]enerally, in a non-stressed person, and this is, as you know, an estimate, but *once the food is in the stomach, it takes, if the person is not stressed, roughly two hours, one to three is a good range, before it passes into the small intestine.* So it would suggest that [the victim] had eaten or eaten and/or drunk food within roughly two hours before the assault. [Emphasis added.]

Thus, Cohle testified that it could take one to three hours for food to pass from the stomach to the small intestine, and the prosecutor properly argued that a child's stomach "empties" in three hours. Indeed, Dr. Cohle expressly indicated that the evidence suggested that the victim "had eaten and/or drunk food within *roughly two hours* before the assault." In short, the prosecutor's argument was firmly based in Dr. Cohle's testimony and there is no basis on which to conclude that the prosecutor argued facts not in evidence. Cf. *Unger*, 278 Mich App at 241. Further, because this argument was not improper, any objection by defense counsel would have been futile, and counsel cannot be considered ineffective for failing to make a meritless objection. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

Affirmed.

/s/ Donald S. Owens
/s/ William B. Murphy
/s/ Joel P. Hoekstra

-8-