*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONALD GEORGE DELUCAS,

        Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 347590
Eaton Circuit Court
LC No. 2017-020106-FH

Before: REDFORD, P.J., and RIORDAN and TUKEL, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault by strangulation, MCL 750.84(1)(b); domestic violence, third offense, MCL 750.81(5); interference with electronic communications, MCL 750.540(5)(a); and unlawful imprisonment, MCL 750.349b. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to serve 8 to 15 years' imprisonment for his assault by strangulation conviction; 5 years to 90 months' imprisonment for his domestic violence conviction, third offense; two to three years' imprisonment for his interference with electronic communications conviction; and 8 years to 270 months' imprisonment for his unlawful imprisonment conviction. We affirm.

## I. UNDERLYING FACTS

This appeal arises from a domestic assault that took place on March 1, 2017. The only people present during the incident were defendant and the victim, with whom defendant previously had a dating relationship. The attack took place over several hours, resulting in injuries to the victim's eye, jaw, and face. According to the victim's testimony, she came home at approximately 9:00 p.m. to find defendant intoxicated. Shortly thereafter, defendant pushed her into a dining room table, breaking the table and injuring her hip. Defendant then got on top of the victim and began alternately strangling her and hitting her in the face. After this went on for some time, defendant allowed her to walk to the bedroom on her knees while holding defendant's hand. After another round of strangulation and beatings in the bedroom, defendant took the victim's cell phone and sat with her until approximately 3:00 a.m., not allowing her to move or use the restroom. The victim reported the incident to the police the following day.

-1-

Defendant's first trial ended in a mistrial. At his second trial, defense counsel suggested in his opening statement and closing argument that the evidence established domestic violence, but that defendant had been overcharged with respect to the charges of assault by strangulation and unlawful imprisonment. Defendant later interrupted the trial proceedings, in the presence of the jury, by stating that his trial counsel prejudiced his defense. Defendant was then removed from the courtroom until closing arguments. Following defendant's conviction on all four charges, he moved for a new trial on the basis that his trial counsel violated his Sixth Amendment rights by conceding defendant's guilt to the two lesser charges. Following an evidentiary hearing, defendant's motion was denied by the trial court. This appeal followed.

## II. DEFENSE COUNSEL'S ADMISSION OF DEFENDANT'S GUILT

Defendant argues that his trial attorney's decision to concede guilt to the two least-serious charges, domestic violence and interference with electronic communications, violated his Sixth Amendment right to right to autonomy in his choice of defense under *McCoy v Louisiana*, ___ US ___; 138 S Ct 1500; 200 L Ed 2d 821 (2018). We disagree.

### A. STANDARD OF REVIEW

This Court reviews constitutional issues de novo. *People v Kammeraad*, 307 Mich App 98, 146; 858 NW2d 490 (2014). "[T]his Court reviews for clear error the trial court's findings of fact." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

### B. ANALYSIS

The Sixth Amendment grants the accused in criminal prosecutions the right to "the assistance of counsel for his defense." US Const, Am VI. In providing this assistance, defense counsel has a duty to consult with the defendant to discuss potential strategies. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984) ("From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."). Whether to admit guilt to a charge is a matter of trial strategy, albeit one that the defendant, rather than his or her attorney, makes. See *Florida v Nixon*, 543 US 175, 187-188; 125 S Ct 551; 160 L Ed 2d 565 (2004). When the defendant consents to the recommendations of counsel—or neither consents nor objects—counsel's actions in representing the defendant are evaluated on the basis of the standard applicable to ineffective-assistance-of-counsel claims: whether counsel's representation was below an objective standard of reasonableness. *Nixon*, 543 US at 178; see also *Strickland*, 466 US at 688. But defense counsel may not concede guilt to a charge if the client has given clear instructions to the contrary. *McCoy*, ___ US at ___; 138 S Ct at 1509.

In *McCoy*, ___ US at ___; 138 S Ct at 1505, the Court held that

a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant

the best chance to avoid the death penalty. Guaranteeing a defendant the right "to have the Assistance of Counsel for his defence," the Sixth Amendment so demands. With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

The Court further held that violation of this constitutional right is a structural error that is not subject to ineffective-assistance-of-counsel analysis.[1] *Id.* at ___; 138 S Ct at 1510-1511. "If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way." *Id.* ___; 138 S Ct at 1509. When a defendant has made such an express statement, the issue is a matter of client autonomy and the ineffective-assistance-of-counsel analysis is inapplicable; rather, counsel's usurpation of the defendant's right to autonomy is a structural error. *Id.* ___; 138 S Ct at 1510-1511. "When a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *Id.* ___; 138 S Ct at 1509, quoting US Const, Am VI.

In contrast, in *Nixon*, 543 US at 178, 181-182, the Court concluded that the defendant was not entitled to relief when he neither consented nor objected to his trial counsel's communicated trial strategy of admitting guilt.

> When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain. [*Id.* at 192.]

In this case, defendant's attorney testified at the evidentiary hearing that defendant agreed with his strategy of admitting guilt to the two lesser charges with the goal of persuading the jury that the two more serious charges did not apply. Counsel testified that "my conversations with Mr. DeLucas included the idea that if he was convicted of the two minor counts, I'll call them, but yet was acquitted of the two most serious accounts, he agreed that that would be very much in his best interests. He agreed to that." Defendant did not present any evidence disputing counsel's statement. Instead, defendant points to his outburst in court during the trial—in the presence of the jury—in which he stated that his attorney had prejudiced his case. But by the time defendant made this statement, counsel had already put his strategy before the jury in his opening statement. Counsel also testified that in a conversation with defendant after this outburst, defendant "calmed down and he told me that he understood and without perhaps saying so, it was okay, you know, to continue." Indeed, the trial court concluded, at the end of the evidentiary hearing, that defendant

---

[1] Indeed, defendant in this case explicitly states that he is not raising an ineffective-assistance-of-counsel claim regarding counsel's concession of guilt.

did not make any express statements to counsel instructing him to maintain innocence for the domestic assault and interference with electronic communications charges.

The United States Supreme Court has clearly established that, when "[p]resented with *express statements* of the client's will to maintain innocence . . . counsel may not steer the ship the other way." *McCoy*, ___ US at ___; 138 S Ct at 1509 (emphasis added). In *McCoy*, the defendant expressly forbade his attorney from the beginning—and on numerous occasions—from admitting guilt to any charges. *Id.* at 1506-1507. In this case, however, the trial court concluded that defendant did not expressly prohibit counsel from making any admission with respect to the charged crimes. We are bound to accept those findings, as they are not clearly erroneous. See MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."). Accordingly, defendant's argument that his Sixth Amendment rights were violated is without merit. See *McCoy*, ___ *US* at ___; 138 S Ct at 1509; *Nixon*, 543 US at 192.

### III. EVIDENCE OF PRIOR INCIDENTS OF DOMESTIC VIOLENCE

Defendant argues that the trial court abused its discretion by allowing testimony from defendant's former girlfriend concerning prior assaultive conduct. We disagree.

### A. STANDARD OF REVIEW

When properly preserved, this Court "review[s] for an abuse of discretion a trial court's decision to admit or exclude evidence," and reviews any preliminary legal questions of law de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). Preliminary questions of law require a court to determine "whether a rule of evidence or statute precludes admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted).

### B. ANALYSIS

Relevant evidence of prior domestic assaults is admissible to prove any issue, including the character of the defendant, if the evidence meets the standard of MRE 403. MCL 768.27b; *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007). Thus, "in cases of domestic violence, MCL 768.27b permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010).

MCL 768.27b(1) provides:

Except as provided in subsection (4)[2], in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is unfairly prejudicial. In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017).

As noted, MCL 768.27b applies to "an offense involving domestic violence[.]"[3] Contrary to defendant's argument on appeal, a difference in the length of a covered relationship has no effect on the admissibility of acts of domestic violence under MCL 768.27b. As such, the fact that defendant's relationship with his former girlfriend was much longer than his relationship with the victim in this case does not affect the admissibility under MCL 768.27b of defendant's acts of domestic violence against his former girlfriend. "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW 2d 888 (2000). The types of assaultive behavior described by defendant's former girlfriend were nearly identical to those described by the victim in this case, including hitting, punching, choking, dragging her around, keeping her up all night, taking her cell phone, and making threats. See *People v Watkins*, 491 Mich 450, 492; 818 NW2d 296 (2012) ("[T]he other-acts evidence was highly probative for rebuttal purposes and tended to support the victim's credibility."). This evidence was relevant, and thus admissible, precisely because it was so probative of his guilt in this case. See *Railer*, 288 Mich App at 219-220 (holding that "in cases of domestic violence, MCL 768.27b permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act"). Defendant's former girlfriend testified about events that were strikingly similar to the assault at issue in this case. Consequently, the probative value of the

---

[2] Relating to acts occurring more than 10 years previously.

[3] Under the statute, "domestic violence" includes causing physical harm to a "family or household member." MCL 768.27b(6)(a)(*i*). As the definition of "family or household member" includes "[a]n individual with whom the person has or has had a dating relationship," MCL 768.27b(6)(b)(*iv)*, section 768.27b applies to the present case.

testimony of defendant's former girlfriend was not substantially outweighed by the danger of undue prejudice. Thus, the trial court did not err by admitting it.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective because he failed to cross-examine the victim about her mental-health diagnoses, as had been done in defendant's first trial. We disagree.

## A. STANDARD OF REVIEW

"Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Trakhtenberg*, 493 Mich at 47. "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *Dillon*, 296 Mich App at 508.

## B. ANALYSIS

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *Trakhtenberg*, 493 Mich at 56.

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Washington*, 466 US at 689. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defense counsel may decide, for example, "not to object to an obvious error" for "strategic reasons." *People v Randolph*, 502 Mich 1, 12; 917 NW2d 249 (2018). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy." *Unger*, 278 Mich App at 242-243.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of

counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. [*Strickland*, 466 US at 689 (citation omitted).]

"Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id*.

Furthermore, with regard to prejudice, as noted, to obtain a new trial on ineffective assistance grounds, a defendant must show that "there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014). (quotation marks and citation omitted). To meet this standard, a defendant does not have to show that the evidence would have ensured acquittal, *id*., nor is a defendant even required to show that counsel's failure more likely than not altered the outcome, *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011). Nevertheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id*. "[W]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Trakhtenberg*, 493 Mich at 56.

Defendant argues that his trial counsel's performance was deficient because he did not ask the victim questions on cross-examination that pertained to her mental stability, as defendant's previous attorney had done in his first trial, which ended in a hung jury. Defendant contends that these questions would have helped support his self-defense theory. But for the present trial, defendant's counsel had rejected self-defense as a valid theory for defendant's case. In deciding against pursuing a line of questioning concerning the victim's mental health, it is possible that counsel considered that asking these questions might have been perceived negatively by the jury, as a means of attacking the victim. Additionally, at the first trial, the prosecution also questioned the victim about her mental health and she testified that her condition had improved by the time of the assault in question due to changes in her prescribed medication. As such, it was a reasonable strategic decision for defendant's trial counsel to not question the victim about her mental health. Finally, defendant has not demonstrated that the inclusion of the victim's testimony on this topic would have influenced the outcome of the trial. See *Jackson*, 292 Mich App at 600-601. Thus, defendant received the effective assistance of counsel.

## V. OV 7

Defendant argues that 50 points should not have been assessed for offense variable (OV) 7. We disagree.

## A. STANDARD OF REVIEW

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "The sentencing Court may consider facts not admitted by the defendant or found beyond a reasonable doubt by the jury. Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v Roberts*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 339424) (2020); slip op at 4, reversed in part on other grounds by *People v Roberts*, ___ Mich ___; ___ NW2d ___ (Docket No. 161263).

## B. ANALYSIS

Offense variable 7 is codified in MCL 777.37 and "[a] trial court can properly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *Hardy*, 494 Mich at 439-440. The four categories of conduct listed in subsection (1)(a) are "sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "Similarly egregious conduct" refers to conduct that is similar to sadism, torture, or excessive brutality, not merely any type of conduct, and must be "designed to substantially increase the fear and anxiety a victim suffered during the offense." See *People v Rodriguez*, 327 Mich App 573, 579-580; 935 NW2d 51 (2019) (citation omitted) ("[W]e now turn to whether defendant's conduct was intended to make [the victim's] fear or anxiety greater by a considerable amount while keeping in mind the legislative command that this conduct must have been similarly egregious to sadism, torture, or excessive brutality.").[4] When making sentencing guidelines determination under OV 7, "all relevant evidence should be closely examined," to determine

---

[4] *People v Walker*, 330 Mich App 378, 390; 948 NW2d (2019), reached a contrary conclusion, arguably improperly. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."). However, we consider both aspects of OV 7, viz, whether defendant's conduct was similar egregious to torture, sadism, or excessive violence; and whether it was designed to substantially increase the fear and anxiety a victim suffered during the offense. Consequently, defendant could not be prejudiced by any error in applying OV 7.

whether the "conduct was intended to make the victim's fear or anxiety increase by a considerable amount." *Hardy*, 494 Mich at 443-444.

Neither party argues that this case involves an instance of sadism or torture.[5] Consequently, the issue is whether defendant's actions constituted "excessive brutality" or "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." When the trial court considered OV 7, it did so based on our Supreme Court's ruling in *Hardy* that "similarly egregious conduct" could be any sort of conduct, not necessarily related to sadism, torture, or excessive brutality.[6] But MCL 777.37 was amended in response to *Hardy*, see 2015 PA 137, and the post-*Hardy* version of OV 7 requires "similarly egregious conduct" to be related to sadism, torture, or excessive brutality, see *Rodriguez*, 327 Mich App at 579-580; *People v Walker*, 330 Mich App 378, 390; 948 NW2d (2019). Consequently, the trial court committed an error of law when it based its OV 7 scoring decision on *Hardy* rather than *Rodriguez*'s interpretation of the updated statute. But "we do not reverse where the trial court reaches the right result for a wrong reason." *People v Ramsdell*, 230 Mich App 386, 406; 585 NW2d 1 (1998). Consequently, we still must determine whether the trial court correctly assessed 50 points for OV 7 even if it did so for the wrong reason.

Defendant's conduct in this case vastly exceeded the minimum requirements for the offenses of conviction, in both length of time and severity of conduct. The victim's testimony established that defendant repeatedly strangled her to the point of unconsciousness, at which point he hit her in the face until she woke up so he could repeat the process. Defendant took the victim's cell phone from her and told her that no one would be able to hear her. Defendant also forced her to walk to the bedroom on her knees while holding his hand and again assaulted her while they were both in the bedroom. Defendant them made her sit on the bed for hours, opposite from the side of the bed where she kept a shotgun; defendant made clear that he was aware of the shotgun. He also would not allow the victim to go to the bathroom. Taken as a whole, these actions fall

---

[5] "Sadism" is statutorily defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). This Court has defined "torture" as "the act of inflicting excruciating pain, as punishment or revenge, as a means of getting a confession or information, or for sheer cruelty." *Rodriguez*, 327 Mich App at 578 n 2 (citation and quotation marks omitted). This Court has additionally defined "excessive brutality" as "savagery or cruelty beyond even the 'usual' brutality of a crime." *Id.*

[6] MCL 777.37(1)(a), as amended by 2002 PA 137, when interpreted by the *Hardy* court provided that trial courts must assess 50 points for OV 7 when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." The legislature amended MCL 777.37(1)(a) in response to *Hardy* with 2015 PA 137, which is still in effect today. The current version of MCL 777.37(1)(a) provides that trial courts must assess 50 points for OV 7 when "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

within the range of conduct that is similarly egregious to sadism, torture and excessive brutality and designed to substantially increase the fear and anxiety a victim suffered during the offense.

Further, this conduct went beyond that needed to complete the sentencing offense. Defendant's efforts to restrain the victim started almost immediately after the attack began, when defendant pinned her to the floor, locking her arms with his legs. Because defendant's actions in strangling and beating the victim are beyond what was required to complete the act of unlawful imprisonment, MCL 750.349b, and were designed to substantially increase the fear and anxiety a victim suffered during the offense, these actions support an OV 7 score of 50 points. *Rosa*, 322 Mich App at 743-744.

## VI. CONCLUSION

For the reasons stated in this opinion, defendant's convictions and sentences are affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Jonathan Tukel