PEOPLE v RAILER

Docket No. 291817. Submitted April 13, 2010, at Lansing. Decided April 20, 2010, at 9:00 a.m.

Jeremy E. Railer was convicted of unlawful imprisonment, MCL 750.349b, among other crimes, by a jury in the Ingham Circuit Court, Rosemarie E. Aquilina, J. Defendant appealed only his unlawful-imprisonment conviction, which arose from an incident in which he dragged the woman he was dating across a parking lot, forced her into her car, and drove her to a location he forbade her to disclose.

The Court of Appeals *held*:

1. Evidence that defendant had forced the victim into her car, struck and choked her when she protested his actions, and forbidden her to reveal her location to her sister when she called the victim's cell phone was sufficient to support his conviction for unlawful imprisonment.

2. The trial court did not abuse its discretion by allowing two of defendant's former girlfriends to testify that he had physically abused them. MCL 768.27b(1) allows the admission of evidence of other acts of domestic violence to show a defendant's character or propensity to commit the same act if it is not otherwise excluded under MRE 403 and the other requirements of MCL 768.27b are met.

Affirmed.

EVIDENCE — OTHER ACTS OF DOMESTIC VIOLENCE.

Evidence of other acts of domestic violence that occurred within 10 years of the charged offense is admissible for any purpose for which it is relevant, including to show a defendant's character or propensity to commit the same act, if it is not otherwise excluded under MRE 403 (MCL 768.27b).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, *Guy L. Sweet*, Appellate Division Chief, and *John J. Murray*, Assistant Prosecuting Attorney, for the people.

*Lawrence J. Bunting* for defendant.

Before: Saad, P.J., and Hoekstra and Murray, JJ.

Murray, J. Defendant appeals as of right his jury trial conviction of unlawful imprisonment, MCL 750.349b, for which he was sentenced as a third-offense habitual offender, MCL 769.11, to 129 months to 30 years' imprisonment.[1] We affirm.

## I. BACKGROUND

This is a case about control. It arises out of defendant's romantic relationship with Amy Nichols. These individuals, having dated sporadically in their youth, resumed their amorous affair and began cohabitating in November 2007. Defendant was jobless, without a car, and completely reliant on Nichols for his transportation. In Nichols's words, defendant "did what he wanted to do," and while defendant left her ignorant about his activities, "[her] business was his business."

The relationship had a long history of dysfunction. For example, on one occasion in April 2008, Nichols was arrested—while in her car with her children—when a police officer discovered marijuana under her seat. Nichols testified that although the marijuana was defendant's, she decided to take the blame because she still loved defendant, who had nonetheless threatened that if Nichols faced subsequent criminal charges, he would deny his ownership of the drugs and inculpate Nichols.

---

[1] Defendant was also convicted of possession of marijuana, MCL 333.7403(2)(d), and assault and battery, MCL 750.81 (the lesser included offense of his original charge of assault with intent to do great bodily harm less than murder, MCL 750.84), but appeals neither of these convictions.

Nichols had little contact with defendant following her arrest until June 16, 2008. On that date, defendant approached Nichols, who was in her car. Upon Nichols's attempt to leave, defendant reached through the open car window, grabbed Nichols by the throat, and threatened to kill her. Defendant called Nichols later that night, this time threatening to "slit [her] throat." The next night, June 17, 2008, Nichols was driving to her aunt's house when defendant called her phone and told her to stop the car and back up, whereupon defendant got into the car and began driving. With Nichols unsure of their destination, defendant took Nichols's cellular phone after her sister called. Minutes later, defendant and Nichols arrived at the apartment complex of defendant's friend, but defendant refused to return Nichols's phone or keys and instead twisted her wrist and told her that she was going to spend time with him. The two went into the apartment, but returned a short time later when defendant needed to retrieve an item from the car. Seizing the opportunity, Nichols ran into the apartment ahead of defendant, borrowed the cellular phone of an unknown man inside, and informed her sister of her whereabouts. Defendant subsequently located Nichols and took her outside, at which point Nichols sat down in the middle of the parking lot hoping to buy time until the police arrived.

At that, defendant dragged Nichols by her hair across the parking lot and into the car. Defendant then drove Nichols to another parking lot, where he punched her in the mouth and choked her until she lost consciousness because Nichols "wouldn't shut [her] smart mouth." When Nichols resumed consciousness, defendant drove to a store. Nichols, however, refused to accompany defendant into the store because she had "wet [her] pants." During this time, Nichols's sister had been calling repeatedly. On the fourth call, defendant held

the phone to Nichols's ear and instructed her not to reveal their location and threatened to hang up the phone if Nichols did not comply because, as Nichols testified, defendant had told her that "nobody was going to get in the way of him spending time with [Nichols]." Scared of defendant, Nichols complied.

After the call, Nichols reassured defendant that she loved him and convinced him to go into the store by himself, since her pants were wet, to buy her new pants. Once defendant went into the store with Nichols's phone, Nichols enlisted the aid of a man in the parking lot to lead her safely into the store. Inside, the store manager assisted Nichols in reporting the incident to police and her family. Police arrived, and after a brief chase inside the store, defendant was arrested as he was attempting to hide an item on a store shelf. A canine officer later discovered marijuana on a shelf next to the area where defendant was arrested. After a jury trial, defendant was convicted of unlawful imprisonment, possession of marijuana, and assault and battery. The instant appeal ensued.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that insufficient evidence existed to support his conviction of unlawful imprisonment. Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). In determining the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prosecution. *People v Tombs*, 472 Mich 446, 459; 697 NW2d 494 (2005). We do not consider whether any evidence existed that could support a

conviction; rather, we must determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), citing *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979) (opinion by COLEMAN, C.J.). "[C]ircumstantial evidence and reasonable inferences arising from th[e] evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

As noted, defendant was convicted of unlawful imprisonment under MCL 750.349b, which provides as follows:

> (1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:
>
> (a) The person is restrained by means of a weapon or dangerous instrument.
>
> (b) The restrained person was secretly confined.
>
> (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

Thus, to be guilty of unlawful imprisonment under MCL 750.349b(1)(b), (1) a defendant must knowingly restrain a person, and (2) the restrained person must be "secretly confined." " 'Restrain' means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). To "secretly confine" means either "[t]o keep the confinement of the restrained person a secret" or "[t]o keep the location of the restrained person a secret." MCL 750.349b(3)(b)(*i*) and (*ii*).

Ample evidence was presented to support this conviction. First, it is clear that Nichols was forcibly confined against her will when defendant dragged her by her hair across the parking lot to force her into the car. Twice after leaving the apartment—once at the store and once before arriving—the car was parked. However, Nichols dared not leave while in defendant's presence given that, before arriving at the store, defendant had struck her face and choked her until she lost consciousness when she voiced her displeasure with the situation. Once at the store, defendant—who was in possession of Nichols's phone and answered the fourth call of Nichols's sister—precluded Nichols from communicating freely with her family and took the car keys and Nichols's phone when he went into the store. These same acts provided sufficient evidence that defendant knowingly committed this misconduct, so a jury could have reasonably inferred that defendant knowingly restrained Nichols. Furthermore, the phone call from Nichols's sister revealed that defendant intended to keep both the actual confinement and location of the confinement a secret. Indeed, frightened of defendant, Nichols complied with defendant's demand that she not reveal their location. See *People v Jaffray*, 445 Mich 287, 309; 519 NW2d 108 (1994) ("[T]he essence of 'secret confinement' . . . is deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament.").

Defendant counters that his conviction is unsustainable where (1) he left Nichols alone in the car before she freely walked into the store and reported defendant to police and (2) Nichols's credibility was suspect given her letters to defendant before trial in which she admitted she was lying. Neither argument has merit. First, MCL 750.349b(3)(a) expressly provides that "[t]he restraint does not have to exist for any particular

length of time . . . ." The period from when defendant dragged Nichols into the car until he left Nichols to go inside the store was sufficient to sustain defendant's conviction under the statute. Second, issues of witness credibility are matters for the jury and not this Court. *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004). Hence, defendant's arguments on both scores do not alter our conclusion that this conviction must stand.

### B. OTHER ACTS OF DOMESTIC VIOLENCE

Defendant's final argument is that MRE 404(b) precluded the admission of the testimony of two former girlfriends who revealed his prior threats and acts of violence against them. A trial court's evidentiary ruling is reviewed for abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). However, preliminary questions of law pertaining to this issue are reviewed de novo. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).[2]

Evidence is generally admissible if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice. MRE 402; MRE 403; *People v Taylor*, 252 Mich App 519, 521; 652 NW2d 526 (2002). Under MRE 404(b), the prosecution may not present evidence of a defendant's other crimes, wrongs, or acts in order to show a defendant's propensity to commit a crime. *People v Magyar*, 250 Mich App 408, 413-414; 648 NW2d 215 (2002). Notwithstanding this prohibition, however, in cases of domestic violence, MCL 768.27b permits evidence of prior domestic violence in order to show a defendant's character or

---

[2] Contrary to the prosecution's claim, this issue is preserved because defendant challenged the admission of this evidence at trial and in his pretrial motion.

propensity to commit the same act. *People v Schultz*, 278 Mich App 776, 778; 754 NW2d 925 (2008). That statute provides in relevant part:

> Except as provided in [MCL 768.27b(4)], in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403. [MCL 768.27b(1).]

Here, defendant was accused of assault with intent to commit great bodily harm less than murder. Such conduct constitutes "domestic violence," which is defined to include occurrences causing physical or mental harm to a family or household member or placing a family or household member in fear of harm.[3] MCL 768.27b(5)(a)(*i*) and (*ii*). At trial, the prosecution called defendant's former girlfriends from four and five years earlier. Both testified about defendant's physical abuse and threats to kill them. One testified that defendant forced her into his van and drove off with her against her will, and the other explained that defendant would grab and yell at her to listen to him. Such behavior clearly meets the definition of "domestic violence" under the statute, occurred within 10 years of the charged offense as required by MCL 768.27b(4), and would be highly relevant to show defendant's tendency to assault Nichols as charged. Furthermore, MRE 403 did not preclude admission of this evidence where the testimony of the former girlfriends was brief and not nearly as graphic or violent as defendant's transgressions recounted in Nichols's testimony. While this evidence was certainly damaging and prejudicial—as is

---

[3] A "family or household member" includes individuals with whom a defendant had a dating relationship. MCL 768.27b(5)(b)(*iv*).

most evidence presented against a criminal defendant—it was by no means inflammatory, nor did it interfere with the jury's ability to logically weigh the evidence. *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995). Its admission was, therefore, proper.

Affirmed.