*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN ALLEN LAKE,

        Defendant-Appellant.

UNPUBLISHED
August 19, 2021

Nos. 353053
Monroe Circuit Court
LC Nos. 19-245406-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN ALLEN LAKE,

        Defendant-Appellant.

No. 353058
Monroe Circuit Court
LC No. 19-245410-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN ALLEN LAKE,

        Defendant-Appellant.

No. 353225
Monroe Circuit Court
LC No. 19-245411-FH

---

Before: CAVANAGH, P.J., MURRAY, C.J. and REDFORD, J.

PER CURIAM.

-1-

In these consolidated appeals,[1] in Docket No. 353053 defendant appeals as of right his jury trial convictions of unlawful imprisonment, MCL 750.349b, and assault with intent to do great bodily harm less than murder or by strangulation (AWIGBH), MCL 750.84. Defendant also appeals as of right his convictions of domestic violence, MCL 750.81(2), and third-offense domestic violence, MCL 750.81(4), in Docket Nos. 353058 and 353225. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 48 to 120 months' imprisonment each for his domestic violence and third-offense domestic violence convictions, and 148 months to 300 months' imprisonment each for his AWIGBH and false imprisonment convictions. Defendant's appeal focuses solely on challenges to his conviction of unlawful imprisonment, and alternatively argues ineffective assistance of counsel. We affirm defendant's conviction and sentence.

## I. BACKGROUND

This case arises out of three domestic violence incidents that occurred on June 28, 2019, August 16, 2019, and August 30, 2019.[2] As noted, defendant challenges only his unlawful imprisonment conviction, which arose out of two separate incidents on August 30, 2019. Defendant had two minor children with the victim of these incidents, LLB.

## A. THE BASEMENT INCIDENT

Defendant was staying at LLB's house on the evening August 30, 2019. About 8:30 p.m. that evening, LLB heard a knock at the door. Looking out the window, she saw a uniformed police officer, Officer Scott Pitcher of the Monroe Police Department, who had come to serve a subpoena on LLB.[3]

---

[1] *People v Lake*, unpublished order of the Court of Appeals, entered April 1, 2020 (Docket Nos. 353053, 353058, 353225).

[2] Each incident was initially charged as a separate case and the cases were later consolidated for trial and tried before a single jury.

[3] The subpoena was to summon LLB to testify about an earlier domestic violence incident involving defendant. According to LLB, once alerted of the officer's presence, defendant ushered LLB and the children down to the basement and told them to keep quiet. LLB testified that defendant wanted to prevent her from being subpoenaed. According to defendant, however, it was LLB who did not want to answer the door, as she did not want to get in trouble for having defendant over in violation of his bond. Thus, according to defendant, LLB and the children went downstairs on their own volition. Once in the basement, LLB tried to go upstairs, but according to LLB, defendant blocked the doorway and would not let her pass. Though she could not recall what defendant said, she testified that defendant threatened to harm her should she go upstairs. Defendant denied threatening harm to LLB or preventing her from going upstairs. Officer Pitcher left about two or three minutes after knocking on the front door, and defendant allowed LLB and the children to come upstairs.

## B. THE CLOSET INCIDENT

A few hours later, LLB and defendant started to argue. At some point during the argument, defendant grabbed LLB by the throat and lifted her off the ground. Suddenly, LLB's daughter entered the room, and defendant released LLB. Shortly thereafter, LLB slipped one of her children her cell phone and told him to call 911, which he successfully did.

In response to the child's 911 call, Officers Daniel Clanton, Tyler Kleinert, and Pitcher were dispatched to LLB's house about midnight. Officer Clanton testified that the officers knocked on the front door and announced their presence but received no response. The officers surveyed the exterior of the house and knocked on different doors and windows to see if anyone would respond, but no one did. The doors and windows were covered with curtains, so the officers could not see inside the house.

When defendant saw that the police had arrived, according to LLB defendant ushered her and the children into the children's shared bedroom, and instructed them to get into the bedroom closet. They complied, and defendant stood in front of the closet door to prevent them from leaving. About 20 minutes later, LLB asked defendant if she could take a child to use the bathroom, which defendant permitted. But defendant required the other child to stay in the closet. Once in the bathroom, LLB accidentally knocked over a towel rack. Defendant heard this and asked about the noise. When defendant came to investigate, LLB struck defendant two or three times with the towel rack, after which she ran to the front door. Defendant followed her. LLB testified that she could not get the front door open—either because defendant was holding it shut or because the door's latch was stuck. She screamed for help, and then ran to the sliding glass door at the back of the house. Officer Pitcher was outside the sliding glass door, and he testified that LLB yanked back the curtains covering the sliding glass door and began fumbling to get the lock undone to let him in. He testified that LLB appeared "[p]anicked, frenzied, hysterical." After LLB opened the sliding glass door, Officer Pitcher observed defendant "pushing up against the [front door] trying to keep it closed." Just then, Officers Clanton and Kleinert broke down the front door. The officers arrested defendant without further incident.

At trial, defendant denied confining LLB and the children in the closet. He testified that the closet has a dresser and stackable shelves in it, so according to defendant, three people could not fit inside the closet. When asked why he did not open the door for police, defendant testified "[b]ecause I was in violation of my bond."[4] He also testified that, had he known LLB had told one of the children to call the police, he would have opened the door for police.

## C. INSTRUCTIONS

During final instructions, the trial court instructed the jury on the elements of each crime with which defendant was charged. Afterward, the trial court instructed the jury that its verdict on the false imprisonment charge must be unanimous to convict:

---

[4] Defendant was out on bond for a prior domestic violence incident at the time of this alleged offense. One of the conditions of his bond was that he was to have no contact with LLB.

A verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agrees on that verdict. In the jury room, you'll discuss the case amongst yourselves, but ultimately, each of you will have to make up your own mind. A verdict must represent the individual considered judgment of each and every juror.

The trial court, however, did not instruct the jury that its verdict must be unanimous as to the factual basis for defendant's guilt. The trial court excused the jury to deliberate. About two-and-a-half hours later, the jury sent a note to the trial court stating it was having difficulty reaching a consensus "on at least one count." The trial court instructed the jury to keep in mind its instructions from earlier and invited it to submit a written list of issues that were bothering or confusing the jury. After lunch, the jury returned, but it appears the jury never acted on the trial court's invitation to ask further about any issues. About a half-hour after resuming deliberations, the jury reached a verdict, finding defendant guilty of all counts. The trial court polled the jurors after the verdict, and each juror agreed that this was their verdict.

## II. ANALYSIS

Before this Court defendant argues that, although he was convicted of only one count of unlawful imprisonment, the prosecution presented evidence of two or more acts that could have served as the *actus reus* for that count: the basement incident and the closet incident. Yet the trial court did not instruct the jury that it must unanimously agree on the same specific acts forming the *actus reus* for defendant's conviction. Defendant concedes that his trial counsel did not request a specific unanimity instruction, but defendant argues that it was plain error for the trial court not to have provided one sua sponte. In the alternative, defendant argues that his trial counsel rendered ineffective assistance by failing to request a specific unanimity instruction.

## A. JURY INSTRUCTIONS

We review de novo "jury instructions that involve questions of law . . . ." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citation omitted). "But a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id*.

To preserve a challenge to jury instructions, a party must object to or request an instruction before the jury deliberates. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). If a party fails to do so, relief is only warranted if the alleged error was plain and it affected defendant's substantial rights. MCL 768.29; *People v Kowalski*, 489 Mich 488, 505-506; 803 NW2d 200 (2011); see also *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant concedes that his trial counsel did not request a specific unanimity instruction. We therefore review for plain error. Under plain-error review, reversal is warranted only if the defendant can establish the following: (1) an error occurred; (2) that error was plain; and (3) that error affected the defendant's substantial rights. *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. If the defendant successfully carries this burden, this Court should reverse if

-4-

"the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence.'" *Id.*, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotations marks and citation omitted).

Both the Michigan Constitution and the United States Constitution require all criminal convictions to be secured by a unanimous jury verdict. Const 1963, art I, § 14; US Const, Am VI; *People v Cooks*, 446 Mich 503, 524; 521 NW2d 275 (1994); *Ramos v Louisiana*, ___ US ___, ___; 140 S Ct 1390, 1397; 206 L Ed 2d 583 (2020). When the prosecution presents evidence of two or more acts that could serve as the *actus reus* element of the charged offense,

> a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. [*Cooks*, 446 Mich at 524].

When the alternative acts are materially distinct, or if there is reason to believe the jurors might be confused or disagree about the factual basis of a defendant's guilt, "the trial court is required to instruct the jury that it must unanimously agree on the same specific act." *Id*. at 530. In other words, it must give a specific unanimity instruction. *Id*.

As noted, the prosecution presented evidence of two or more acts that could have served as the *actus reus* for unlawful imprisonment: the basement incident and the closet incident. Defendant argues the trial court plainly erred by giving only a general unanimity instruction because these incidents were materially distinct and because there is reason to believe the jurors might have been confused or disagreed about the factual basis of defendant's guilt. We conclude that defendant was not prejudiced when the trial court did not sua sponte instruct the jury in that regard.

Defendant has failed to show that the absence of a specific unanimity instruction had any effect on the outcome. Noting the jury indicated it was having trouble reaching a consensus on one of the counts during deliberations, defendant argues the jury must have been divided on the factual basis for finding defendant guilty of unlawful imprisonment.

It is true that, during its deliberation, the jury informed the trial court that it was having trouble coming to a consensus on one of the charges, but it did not specify which charge. In response to the note from the jury, the trial court told the jury that, if helpful, it could submit a written list of issues for clarification. The jury never followed up. The fact that the jury indicated it was having trouble reaching a consensus on one of the counts, by itself, does not mean it must have been divided as to the factual basis for defendant's unlawful imprisonment count. Defendant assumes that this was the case, but offers no reason to justify this assumption.

More to the point, however, is the strength of the evidence against defendant. We hold that in light of the significant evidence as to both incidents, even if the trial court should have given a

specific unanimity instruction, there is no reason to believe the jury would have been incapable of reaching a consensus on the unlawful imprisonment charge.

Taken as true, LLB's testimony established the elements for unlawful imprisonment. The jury was instructed that a person is guilty of unlawful imprisonment if the prosecution proves two elements beyond a reasonable doubt: (1) that the person knowingly restrained another person; and (2) that the restrained person was secretly confined. See *People v Railer*, 288 Mich App 213, 217; 792 NW2d 776 (2010); see also M Crim JI 19.8. Regarding the basement incident, LLB testified that defendant ordered her and her children into the basement to hide LLB from the police. She testified that defendant prevented her from going upstairs by blocking the door, and that he threatened to harm her should she go upstairs. For the closet incident, LLB testified that defendant ordered her and the children into the closet and threatened to hurt LLB if she did not comply. Defendant then sat in front of the entrance to the closet to prevent LLB and the children from leaving, all in an effort to again hide LLB from police.

Other than defendant's testimony, all other evidence corroborated LLB's version of events, and undermined defendant's version of events. LLB testified that, after hitting defendant with the towel rack, she ran to the front door. Defendant followed her. She could not get the front door open—either because defendant was holding it shut or because the door's latch was stuck. Officer Pitcher testified that, after LLB let him inside the home, he observed defendant pushing against the front door, trying to keep it closed. When LLB could not open the front door, she ran to the sliding glass door at the back of the house and screamed for help. Officer Pitcher corroborated this, testifying that after he heard a female scream, LLB appeared at the sliding glass door in the back of the house. In addition, Officers Clanton, Kleinhart, and Pitcher all testified they heard a female scream for help. Defendant, on the other hand, denied any wrongdoing. He denied constraining LLB and the children in the basement or choking LLB, and he denied constraining LLB and the children in the closet. This is belied by Officers Kleinert's testimony that, when he entered the house that night, he found LLB "crying hysterically," and Officer Alexander McKenzie's testimony that he "thought [LLB] may be seriously injured because of how distraught she was acting." Equally important, defendant had no explanation for why LLB's son called 911, and told the operator that defendant was trying to kill him, his sister, and his mother.

Defendant has offered no reason for us to conclude that the jury would have reached a different verdict regarding the unlawful imprisonment charge had the trial court provided a specific unanimity instruction.

## B. INEFFECTIVE ASSISTANCE

We likewise reject defendant's argument that his trial counsel was ineffective for failing to request a specific unanimity instruction.

To preserve an ineffective assistance of counsel argument, a defendant must move in the trial court for a new trial or evidentiary hearing, or move for remand with this Court. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). Because defendant did not move for a new trial or evidentiary hearing in the trial court, and he did not move this Court for remand, his argument is unpreserved. We therefore review only for errors apparent on the record. Ineffective assistance of counsel arguments present mixed questions of fact and constitutional law. See *People*

*v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *Id.* at 19-20.

Both the Michigan and United States Constitutions require that a criminal defendant be provided effective assistance of counsel in his or her defense. US Const Am VI; Const 1963, art 1, § 20; see also *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). Because this Court presumes that counsel's assistance was effective, a criminal defendant bears the burden of proving otherwise. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted). Establishing ineffective assistance of counsel requires a defendant to show: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that counsel's performance prejudiced defendant. *Id*. A defendant is prejudiced if there is a reasonable probability that the outcome of a proceeding would have been different had counsel performed effectively. *Trakhtenberg*, 493 Mich at 51. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ackley*, 497 Mich at 389.

Even if defendant's trial counsel's performance fell below an objective standard of reasonableness, defendant has failed to show a reasonable probability that the outcome would have been different had trial counsel requested a specific unanimity jury instruction. Defendant argues there is a reasonable probability of a different outcome because, had the trial court given such instruction, "the jury would have been required to agree on which of the factual instances, the basement or the closet, supported their guilty verdict." While true, defendant has provided no reason to believe the jury would not have still come to a unanimous verdict on one of the factual bases. For the reasons discussed above, the evidence for each factual basis was sufficiently strong that there is no reasonable probability that defendant's convictions would have been defective had the instructions been given.

Defendant has failed to establish plain error or show that he was deprived of effective assistance of counsel.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Christopher M. Murray
/s/ James Robert Redford