*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
November 9, 2023

v

TYRIONE ISAIAH HENRIQUES,

        Defendant-Appellant.

No. 359614
Allegan Circuit Court
LC No. 2019-0022477-FC

AFTER REMAND

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

After a four-day trial, a jury convicted defendant, Tyrione Isaiah Henriques, of unlawful imprisonment, MCL 750.349b; two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion); domestic violence, MCL 750.81(2); torture, MCL 750.85; and assault with a dangerous weapon, MCL 750.82. The trial court sentenced defendant to terms of imprisonment of 8 to 15 years for unlawful imprisonment, 10 to 15 years for each CSC-III conviction, 93 days for domestic violence, 23 to 60 years for torture, and 365 days for assault with a dangerous weapon. In defendant's first appeal, this Court, while retaining jurisdiction, remanded for a *Ginther*[1] hearing to address whether defendant's trial counsel rendered ineffective assistance by (1) failing to request a specific unanimity instruction for the torture charge and (2) failing to object to SANE Bonnie Christopher's inadmissible hearsay testimony. *People v Henriques*, unpublished per curiam opinion of the Court of appeals, issued September 14, 2023 (Docket No. 359614), p 12. At the *Ginther* hearing, the trial court found that defendant's trial counsel's performance did not fall below an objective standard of reasonableness because it was reasonable trial strategy for counsel to not request a specific unanimity instruction and not object to the Christopher's testimony. Finding no error, we affirm both findings.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

In defendant's original appeal, he raised several other issues that this Court declined to address as part of this Court's first opinion, explaining that those issues would be addressed "after remand as necessary." *Id*. at p 1 n 3. Addressing those issues, we conclude that none warrant appellate relief except for defendant's argument that he should not have been required to register pursuant to the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., for his conviction of unlawful imprisonment. Accordingly, we affirm defendant's convictions and sentences, but remand to the trial court for entry of an order removing defendant from the sex offender registry for his conviction of unlawful imprisonment.

## I. BACKGROUND

This Court's previous opinion thoroughly laid out the basic facts underlying defendant's convictions, the relevant pretrial history, and the relevant events that transpired at defendant's trial. *Id*. at 2-4. Those facts will not be repeated here. This Court's previous opinion then addressed three claims of ineffective assistance that defendant raised on appeal: (1) whether his trial counsel was ineffective for failing to request a specific unanimity instruction for the charge of torture; (2) whether his trial counsel was ineffective for failing to object to SANE Christopher's hearsay testimony; and (3) whether defendant's trial counsel was ineffective for failing to file an interlocutory appeal challenging the circuit court's reinstatement of charges dismissed by the district court. This Court concluded that the first claim required remand for a *Ginther* hearing; that defendant's second claim identified a potential error that defendant's trial counsel would have the opportunity to explain at the *Ginther* hearing; and that defendant's third claim did not amount to ineffective assistance.

At the *Ginther* hearing on remand, defendant's trial counsel, Damian Nunzio, testified that the defense's theory at trial was that defendant "was innocent of all charges." Nunzio termed this "a global defense" in which the defense's position was that the victim's statements to police and at trial "were completely incredible" and "unreliable." Nunzio explained that this strategy hinged on impeaching the victim's credibility. According to Nunzio, he arrived at this strategy because he believed the victim's "story was just fantastic" because it involved the jury believing that defendant committed a series of heinous acts—like pouring urine on the victim "on a regular basis" and giving the victim chemical burns—while she was "imprisoned in a house full of people." Nunzio further testified that this strategy was consistent with defendant's wishes; Nunzio said that defendant "wanted complete exoneration."

When questioned about why he did not request a specific unanimity instruction for the torture charge, Nunzio testified that it was because doing so "would have cut into" the defense's "global" strategy. Nunzio explained that, with a specific unanimity instruction, "the jury would be going through a process of piecemealing" the victim's testimony to determine whether one portion of it was believable and could support a charge of torture. This was counter to the defense's strategy, according to Nunzio, because the defense wanted the jury "looking globally at [the victim's] entire statements," not parsing through the victim's testimony and finding certain portions that may be more believable than others. Nunzio further explained the he feared that this "piecemealing" of the victim's testimony could lead the jury to credit portions of the victim's testimony unrelated to the torture charge, thereby "encourag[ing] a potential likelihood of convictions on the other charged acts." Nunzio also agreed that, had he requested a specific unanimity instruction to account for the prosecution's two theories of torture, the prosecution could

have requested to add an additional charge of torture to separate its two theories into two distinct charges.

With respect to SANE Christopher's testimony, Nunzio explained that he did not object to Christopher's testimony because it supported the defense's strategy of "this global attack on [the victim's] story." According to Nunzio, Christopher's testimony about statements the victim made to Christopher were inconsistent with statements that the victim made at trial, which "was beneficial to attacking the credibility of" the victim. Nunzio believed that this was particularly powerful support for the defense because Christopher was supposed to be a "nonbiased medical witness" for the prosecution, yet the defense was able to use Christopher's testimony as a means of attacking the victim's credibility. Nunzio reiterated that this was also consistent with the defense's "global" strategy of attacking the victim's credibility to argue that defendant "was completely innocent."

After the parties presented arguments, the trial court found that, based on the reasons Nunzio gave during his testimony, Nunzio's decisions to not object to Christopher's hearsay testimony and not request a specific unanimity instruction were reasonable trial strategy.

## II. INEFFECTIVE ASSISTANCE

A trial court's factual findings after a *Ginther* hearing are reviewed for clear error, while its ultimate ruling on whether defense counsel provided constitutionally ineffective representation is reviewed de novo. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021).

"To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. (quotation marks and citation omitted). Defense "counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). For that reason, this Court will generally "not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). However, a strategy "in fact must be sound, and counsel's decisions as to it objectively reasonable; 'a court cannot insulate the review of counsel's performance by calling it trial strategy.' " *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014), quoting *Trakhtenberg*, 493 Mich at 52.

We agree with the trial court that, based on Nunzio's testimony, his decisions to not object to Christopher's hearsay testimony and not request a specific unanimity instruction were reasonable trial strategy. With respect to Christopher's hearsay testimony, Nunzio testified that he did not object to Christopher's hearsay testimony because it supported the defense's theory that the victim's testimony was incredible. Nunzio explained that Christopher's testimony about statements that the victim made to Christopher contradicted statements that the victim made at trial, thereby supporting the defense's theory. This was plainly trial strategy, and we agree with the trial court that it was reasonable. Accordingly, we conclude that defendant has failed to establish that Nunzio's performance fell below an objective standard of reasonableness in this respect.

-3-

Turning to the specific unanimity instruction, Nunzio testified that he did not request the instruction because doing so would have been inconsistent with the defense's strategy. Nunzio described the defense as a "global" defense in which defendant sought "complete exoneration" by arguing that the victim's entire testimony was unbelievable. According to Nunzio, requesting a specific unanimity instruction would have been inconsistent with this defense because it would have asked jurors to "piecemeal" the victim's testimony. Nunzio feared that, if jurors did so, they may credit some portions of the victim's testimony while still disbelieving the more "incredible" portions. Nunzio was also concerned that encouraging jurors to piecemeal the victim's testimony could lead the jury to convict defendant of some of the other charges, which was inconsistent with the "complete exoneration" that defendant desired. Finally, Nunzio testified that requesting a specific unanimity instruction may have exposed defendant to an additional torture charge, if the prosecution chose to pursue one. Given the wide range of reasonable strategies that defense counsel may use to win a difficult case, we agree with the trial court that Nunzio's trial strategy in this case was reasonable. While there were risks involved with this strategy, Nunzio's testimony demonstrates that he reasonably balanced those risks with both the potential harm that requesting a specific unanimity instruction may have wrought on the defense theory and the potential additional liability that defendant may have been exposed to had Nunzio requested such an instruction. We therefore conclude that defendant has failed to establish that Nunzio's performance fell below an objective standard of reasonableness in this respect as well.

## III. OTHER-ACTS EVIDENCE

In his original brief on appeal, defendant raised several other issues that this Court did not initially address but will do so now. Defendant argues that the trial court erred when it admitted testimony about Marissa Rockett because, according to defendant, the testimony did not meet the requirements of MCL 768.27b, and was irrelevant and unfairly prejudicial. We disagree.

We will briefly summarize the relevant testimony concerning Rockett. Allegan City Police Officer Matthew Luyk testified about a welfare check on Rockett at defendant's house in July 2019. According to Officer Luyk, an hour after the welfare check, the officer was called to the sheriff's station in Allegan, where he encountered Rockett again. She had removed the makeup that she was wearing at the welfare check, and the officer could see bruising on the majority of her left eyelid. Officer Luyk testified that, after he met with Rockett, defendant arrived at the sheriff's station, said that Rockett was his girlfriend and he wanted to see her, and stated that her mother said that Rockett could leave with him. Officer Luyk told defendant that he, too, had spoken with Rockett's mother and that she did not want Rockett going with defendant. According to Officer Luyk, defendant did not respond and left the sheriff's station. The victim also testified that she saw bruises on Rockett's arm and body in the same place where the victim had bruises, and she saw Rockett when she had a black eye.

The decision whether to admit evidence is reviewed for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. See *Gursky*, 486 Mich at 606. Preliminary questions of law are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

As a general rule, evidence of prior bad acts is not admissible to prove the propensity to commit such acts. See *People v Galloway*, 335 Mich App 629, 637; 967 NW2d 908 (2020). A statutory exception to this general rule is provided in MCL 768.27b, which permits evidence of prior domestic violence and sexual assault "to show a defendant's character or propensity to commit the same act." See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010) (addressing the pre-2018 version of the statute, which did not include "sexual assault" language). MCL 768.27b(1) provides, in relevant part:

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial court did not abuse its discretion by allowing the prosecution to admit testimony about Rockett. First, the evidence was relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Other-acts evidence of domestic violence is relevant because it provides "a full and complete picture of a defendant's history . . . [and] tend[s] to shed light on the likelihood that a given crime was committed." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). See also *People v Schultz*, 278 Mich App 776, 778; 754 NW2d 925 (2008) (indicating that, unlike MRE 404(b)(1), MCL 768.27b only requires a showing of "the transparency of a person's character as justification for admitting evidence of other crimes or wrongs").

Defendant argues that the evidence was not relevant for four reasons: (1) Rockett recanted her accusations of domestic violence against defendant; (2) because of Rockett's recantation, defendant did not have a domestic-violence conviction; (3) the victim's testimony about Rockett's bruises did not establish that defendant caused the bruises; and (4) the prosecution did not meet its burden under MCL 768.27c.

Addressing defendant's first argument, the victim's and Officer Luyk's testimonies about their personal observations of Rockett were unaffected by Rockett's recantation. Officer Luyk's testimony, in particular, provided circumstantial evidence from which the jury could have inferred that defendant was the source of Rockett's injuries. Viewing the victim's testimony about bruises in conjunction with Officer Luyk's testimony about his welfare check of Rockett and her subsequent appearance at the sheriff's station with a black eye, the jury could have inferred that defendant was also the source of Rockett's bruises. Both witness's testimonies about Rockett, if believed, provided evidence of defendant's pattern of behavior with domestic partners. See MRE 601, 602 (indicating that competent witnesses may testify about matters of which they have personal knowledge).

In addition, contrary to defendant's suggestion, a domestic-violence conviction is not one of the criteria for admitting evidence under MCL 768.27b. Nor does defendant provide any authority for the proposition that evidence must meet the criteria of MCL 768.27c in order to be admissible under MCL 768.27b. The two rules address different circumstances. MCL 768.27b addresses the admissibility of other-acts evidence of domestic violence or sexual assault, whereas MCL 768.27c addresses the admissibility of a statement by a declarant relating to the infliction or threat of physical injury.

Finally, defendant contends that the evidence was unfairly prejudicial under MRE 403. We disagree. Relevant evidence may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "The 'unfair prejudice' language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted). The admission of evidence is unfairly prejudicial "when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Nothing in the record suggests that testimony about Rockett's bruises and Officer Luyk's encounter with Rockett and defendant "stir[red] such passion as to divert the jury from rational consideration of [defendant's] guilt or innocence of the charged offenses." See *Cameron*, 291 Mich App at 611-612. Moreover, the trial court minimized any prejudicial effect the other-acts evidence may have had by providing a limiting instruction, directing the jury that, if it believed the testimony about Rockett, it could only consider it in deciding if defendant committed the crimes of which he was accused; it could not convict defendant because it thought him guilty of other bad acts. A jury is presumed to follow its instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Accordingly, the trial court did not err by allowing the victim's and Officer Luyk's testimonies about Rockett.

## IV. MCL 769.34(10)

Defendant also argues that the requirement under MCL 769.34(10) for this Court to affirm a within-guidelines sentence, absent a scoring error or reliance on inaccurate information, is inconsistent with *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and violates numerous constitutional rights. Defendant is correct. This Court reviews constitutional challenges to the sentencing guidelines de novo. See *id*. at 373.

The Michigan Supreme Court recently held in *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 26, that *Lockridge* "requires that the portion of MCL 769.34(10) requiring affirmation of within-guidelines sentences on appeal be struck as unconstitutional." The Court also overruled that portion of *People v Schrauben*, 314 Mich App 181, 196 n 10; 886 NW2d 173 (2016), explaining that this Court was required to affirm a within-guidelines sentence that was based on accurate information and contained no scoring errors. The Court held that, "on appeal, challenges to within-guidelines sentences are reviewed for reasonableness according to the test outlined in *Steanhouse*." *Posey*, ___ Mich at ___; slip op at 4-

-6-

5, 26. A within-guidelines sentenced is presumed proportionate, and defendants bear the burden of overcoming this presumption. *Id*. at ___; slip op at 34. Accordingly, defendant is entitled to have his within-guidelines sentence reviewed to determine whether it is proportional to the offenses and the offender. See *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

Defendant contends that his controlling sentence—23 to 60 years' imprisonment for torture—is not proportional because the trial court did not consider that he was 17 years old when he committed the offense. We disagree.

The United States Supreme Court has made clear that "one's juvenile status matters, and special consideration must be paid to youthful offenders before the harshest sentences may be imposed." *People v Boykin*, 510 Mich 171, 185; 987 NW2d 58 (2022). The youthful characteristics of immaturity, impetuosity, and the failure to appreciate risks and consequences are seen to weigh against imposing the harshest sentences on juvenile offenders who commit capital offenses. Accordingly, the United States Supreme Court has held it unconstitutional to impose the death penalty and mandatory sentence of life without parole (LWOP) on juvenile offenders. See *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 407 (2012); *Graham v Florida*, 560 US 48, 76; 130 S Ct 2011; 176 L Ed 825 (2010); *Roper v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005). In addition, in *People v Parks*, 510 Mich 225, 244; 987 NW2d 161 (2022), the Michigan Supreme Court held that sentencing courts must consider the attributes of youth before imposing LWOP sentences on defendants who committed first-degree murder when they were 18 years old. The purpose in imposing a sentence that takes into account the youthfulness of the offender is not to guarantee eventual freedom but to provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 US at 75.

In the present case, defendant cites no authority requiring a trial court to consider the attributes of youth before sentencing a defendant to a term-of-years sentence for torture. Defendant's minimum sentence of 23 years arguably gives him a meaningful opportunity to obtain release. See *id*. Moreover, defendant has not shown how immaturity, impetuosity, and the failure to appreciate risks and consequences factored into his commission of the offense of torture. The record does not reveal, and defendant has not argued, that defendant was vulnerable to negative influences or outside pressure. The fact that he abused the victim over eight or nine months suggests that he was not acting impetuously. And that he kept the abuse out of sight suggests that he was not oblivious to the risks and consequences that would accompany discovery of the abuse. Accordingly, not only has defendant failed to cite any authority supporting that the trial court was required to consider the attributes of youth before sentencing defendant, but it is not apparent from the record how the attributes of youth factored into his commission of the offense of torture. We therefore conclude that defendant has not overcome the presumption that his within-guidelines sentence is proportionate.

## V. SORA REGISTRATION

Defendant raises two issues with the requirement that he register pursuant to the SORA. First, he contends that requiring him to register under SORA, as amended by 2020 PA 95, effective March 24, 2021 (the "2021 SORA") for crimes committed when the 2011 SORA was in effect (MCL 28.721, as amended by 2011 PA 17 and 18), constituted ex post facto punishment. We

disagree. Because this issue comes to us unpreserved, our review is for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Both the Michigan and the United States Constitutions prohibit ex post facto laws. US Const, art I, § 10; Const 1963, art 1, § 10. "A law is considered ex post facto if it: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a [committed] crime; or (4) allows the prosecution to convict on less evidence." *People v Betts*, 507 Mich 527, 542; 968 NW2d 497 (2021) (quotation marks and citation omitted). The trial court in the present case ordered defendant to register under SORA for his conviction of unlawful imprisonment and his two convictions of CSC-III. Defendant argues that the 2021 SORA was more punitive than the 2011 SORA and that requiring him to register under the 2021 SORA for conduct committed when the 2011 SORA was effective violated the prohibition against ex post facto laws. At issue, therefore, is the third type of ex post facto law, i.e., whether the retroactive application of the 2021 SORA unconstitutionally increased punishment for convictions based on conduct that occurred before the 2021 SORA was in effect.

In *Betts*, 507 Mich at 562, our Supreme Court determined that, although the Legislature intended SORA as a civil remedy, SORA's "aggregate punitive effects negate[d] the state's intention to deem it a civil regulation." The Court held, therefore, that the retroactive imposition of the 2011 SORA on registrants increased their punishment in violation of constitutional prohibitions against ex post facto laws. *Id*. In *People v Lymon*, 342 Mich App 46, 68; ___ NW2d ___ (2022), this Court considered whether the retroactive imposition of registration under the 2021 SORA constituted cruel or unusual punishment for registrants whose convictions lacked a sexual component. As part of its analysis, this Court determined that, like the 2011 SORA, the 2021 SORA's aggregate punitive effect "negate[d] the Legislature's intention to deem it a civil regulation." *Id*. at 81.

In the present case, defendant relies on *Betts* and *Lymon* to argue that, because the 2021 SORA added restrictions that were more severe than those in the 2011 SORA, requiring him to register under the 2021 SORA increased his punishment in violation of the constitutional prohibitions against ex post facto laws. The flaw in defendant's argument is his failure to assess the differences between the 2011 SORA and the 2021 SORA as a whole rather than to consider in isolation those provisions in the 2021 SORA that are more restrictive than those in the 2011 SORA. See *Betts*, 507 Mich at 549 (explaining that, to determine whether a statute is punitive in character, a court must consider the statute as a whole). The *Betts* Court indicated that 2020 PA 95 removed several particularly restrictive provisions from the 2011 SORA but also introduced "a bevy of other changes," some ameliorative and some that were more restrictive. *Id*. at 567-568. Neither *Betts* nor *Lymon* addressed whether the 2021 SORA *as a whole* was more punitive than the 2011 SORA. In fact, this Court indicated in *Lymon*, 342 Mich App at 80, that, although the restraints imposed by the 2021 SORA were excessive, they were fewer than in the 2011 SORA.

On the basis of the foregoing, we conclude that defendant has not shown that the 2021 SORA was more punitive as a whole than the 2011 SORA such that the retroactive imposition of the 2021 SORA increased his punishment from what he would have experienced had he been able to register under the version of the SORA that was in effect at the time he committed the registerable crimes, i.e., the 2011 SORA. Accordingly, defendant has not established a violation of the constitutional prohibition against ex post facto laws.

Defendant next argues that the requirement that he register as a sex offender for his conviction of unlawful imprisonment was unconstitutional because the jury did not find that the victim was a minor at the time of the offense, and SORA registration for a nonsexual offense constitutes cruel or unusual punishment in violation of Const 1963, art 1, § 16. We agree. We review this unpreserved issue for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763.

A person who is domiciled in Michigan and who is convicted of a listed offense after October 1, 1995, is required to register under SORA. MCL 28.723(a). Unlawful imprisonment in violation of MCL 750.349b is a Tier I offense if the victim is a minor. MCL 28.722(q) and (r)(*iii*). A victim is a minor if he or she "was less than 18 years of age at the time of the offense committed." MCL 28.722(k).

The prosecution contends that "[w]hen a jury has made no findings . . . no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard." *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019). The prosecution overlooks the caveat that the sentencing court's findings must not "mandate an increase in the mandatory minimum or statutory maximum sentence." *Id*. at 626 n 22. In *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, *any fact that increases the penalty for a crime* beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) The statutory maximum penalty prescribed for unlawful imprisonment is "imprisonment for not more than 15 years or a fine of not more than $20,000.00, or both." MCL 750.349b(2). Defendant was sentenced to 8 to 15 years' imprisonment for unlawful imprisonment. Under SORA, a person who commits unlawful imprisonment and whose victim is a minor is considered a Tier I offender, MCL 28.722(q) and (r)(*iii*), and is required to register as a sex offender, MCL 28.723(1)(a). The registration period is 15 years, MCL 28.725(10), and excludes "any period of incarceration for committing a crime . . . ." MCL 28.725(14). In other words, a defendant required to register as a Tier I offender would have to register as a sex offender for 15 years after the end of his term of imprisonment. With registration under SORA now considered a punishment, see *Lymon*, 324 Mich App at 81, registration would have increased defendant's punishment 15 years beyond the statutory maximum. Such an increase is statutorily authorized for defendants convicted of unlawful imprisonment, but only if the defendant's victim "is a minor." MCL 28.722(q) and (r)(*iii*).

In the present case, whether defendant's victim was a minor at the time of the unlawful imprisonment was not established beyond a reasonable doubt. The jury was not asked to find that the victim was a minor when defendant unlawfully imprisoned her; neither the trial court's jury instructions on unlawful imprisonment nor the verdict form referred to the victim's age. Accordingly, the jury's verdict did not authorize registration under SORA, and the trial court was not permitted to make findings that increased the penalty for an offense. See *Apprendi*, 530 US at 490. Therefore, the trial court committed plain error by requiring defendant to register as a sex offender for his unlawful-imprisonment conviction.

We affirm defendant's convictions and sentences, and remand to the trial court for entry of an order removing defendant from the sex offender registry for his conviction of unlawful imprisonment. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney