*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BRAD ALLEN RISNER,

      Defendant-Appellant.

UNPUBLISHED
March 16, 2023

No. 359368
Jackson Circuit Court
LC No. 20-003135-FC

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant, Brad Allen Risner, was convicted by a jury of one count of first-degree criminal sexual conduct (CSC-1) in violation of MCL 750.520b(1)(f) (force or coercion) and then sentenced to serve 35 to 70 years' imprisonment. The charge arose from a sexual encounter Risner had with the then-16-year-old victim in 2010 that resulted in a pregnancy and the birth of a child. Defendant did not contest the sexual conduct, but he maintained that it was consensual. On appeal, defendant argues that the trial court incorrectly admitted other-acts evidence about uncharged sexual assaults defendant allegedly committed, and that the prosecutor improperly vouched for the credibility of a witness. Defendant also contests the upward departure at sentencing, claiming that his sentence was disproportionate and that the trial court did not properly explain the reasons for departure. We affirm defendant's conviction, but we remand the case for a resentencing hearing where the trial court can explain the grounds for departure and the reasons for the extent of a departure.

## I. FACTUAL BACKGROUND

On February 5, 2010, the victim met defendant when she was staying at a friend's home on Super Bowl weekend. People were smoking marijuana and drinking alcohol in the basement, and at some point everyone went upstairs to an attic bedroom. Ultimately, the victim and defendant were alone in the bedroom. The victim tried to leave the bedroom to join the others, but defendant pulled her back and closed the door. The victim lost her balance, tripped, and fell onto the bed. Then defendant got on top of her and used his weight and one hand to pin her hands between their chests. Defendant freed his penis with his other hand, used his knees to separate the victim's legs, and penetrated the victim's vagina with his penis. The victim said she repeatedly told defendant

"no" and told him to stop, but he was focused on what he was doing and did not say anything to her. Defendant then left the room and, shortly thereafter, the house. The victim became pregnant as a result of the assault and gave birth to a child the day before her seventeenth birthday.

The victim and defendant came into contact again in 2014, and the victim filed a paternity action against defendant in 2015. Test results revealed that defendant was the father of the victim's child. The victim testified that one of the first things that she told defendant when they reconnected was that he had raped her in 2010. According to the victim, defendant "straight up apologized" to her. The victim testified that she wanted to forgive defendant and she wanted her child to have a relationship with defendant. Thus, the victim let defendant take the child for Halloween in 2015. Between Halloween and Christmas of 2015, the victim and defendant had consensual sex at the victim's apartment. The victim let defendant take the child for a Christmas event, but when he did not agree to give the child back, the victim had to drive more than three hours to Muskegon and enlist the police in order to retrieve her child. After that, contact between the victim and defendant stopped.

Defendant was arrested in 2020 on the charge of CSC-1, MCL 750.520b(1)(f) (use of force causing personal injury). The prosecution provided notice of its intent to introduce evidence under MCL 768.27b and MRE 404(b) of 26 other sexual and domestic assaults allegedly committed by defendant against ten different women occurring before and after the CSC-1 offense in 2010. The prosecution argued the probative value of the proffered other-acts evidence was not substantially outweighed by its prejudicial impact because the other-acts evidence: (1) showed "the clear pattern of criminal behavior that the Defendant [chose] to engage in repeatedly"; (2) "strengthen[ed] and accurately support[ed] the credibility of [the victim]," and (3) presented the jury with an accurate picture of the charged crime at issue. At a hearing, the attorneys presented their arguments for and against admissibility of each incident the proposed witnesses were expected to describe.[1] Defense counsel characterized as irrelevant all of the incidents that occurred outside a dating relationship, believing that the crux of the case involved consent and how consensual sex was intermingled with alleged sexual assault. Consequently, defense counsel did not object to the admission of incidents involving proposed witnesses who had dating relationships with defendant and who allegedly had both consensual and nonconsensual sex with him. The trial court permitted most of the other-acts witnesses to offer testimony about incidents over defendant's objections.

At the trial, the victim testified about the 2010 encounter with defendant. Additionally, six women gave other-acts testimony describing how defendant had sexually assaulted them. Similar to the victim's testimony, each of the women testified that defendant shoved her onto a surface—a bed, a floor, a couch, a wall—used his weight to hold her, and used one hand to pin her hand or

---

[1] The discussion of the ten witnesses began at a hearing on April 27, 2021, but the trial court chose to defer rendering rulings until the prosecution and the defense had the opportunity to discuss each proposed witness in detail. That discussion took place at a hearing on June 2, 2021. After hearing from both sides, the trial court ruled that most of the witnesses could testify about other acts with defendant. The trial court's rulings were memorialized in an order entered on August 19, 2021.

arms or cover her mouth while using his other hand to pull down her pants and accomplish sexual penetration. The jury convicted defendant of the single count of CSC-1.

At defendant's sentencing hearing, the prosecution asked for an upward departure from the applicable sentencing-guidelines range based upon several factors for which the guidelines did not adequately account. Although the sentencing guidelines recommended a prison term of 10 to $17^1/_2$ years, the prosecution sought an upward-departure sentence of 40 to 60 years' imprisonment. The trial court sentenced defendant to 35 to 70 years' imprisonment. Defendant now appeals.

## II. LEGAL ANALYSIS

On appeal, defendant raises two issues concerning his trial and a separate issue concerning his sentence. He alleges that the trial court erred in admitting other-acts evidence regarding a raft of sexual assaults for which he was never charged, and he asserts that the prosecutor vouched for a witness. On those grounds, he demands a new trial. In the alternative, defendant challenges his sentence of 35 to 70 years' imprisonment as excessive under the sentencing guidelines. We shall address each of these issues in turn.

## A. OTHER-ACTS EVIDENCE

The prosecution had irrefutable proof (in the form of a child) that defendant and the victim had sexual intercourse in 2010, so the outcome of the trial turned on whether that sexual encounter was consensual or a forced act. To support the CSC-1 charge, therefore, the prosecution presented testimony from six women who alleged that defendant had sexually assaulted them. The decision whether to admit evidence is reviewed for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). When an evidentiary issue presents a close question, the trial court's ruling ordinarily cannot be an abuse of discretion. See *People v Blackston*, 481 Mich 451, 467; 751 NW2d 408 (2008). A trial court may abuse its discretion when its decision arises from an incorrect legal framework, see *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002), and a trial court necessarily abuses its discretion when it admits evidence that is not admissible as a matter of law. See *Gursky*, 486 Mich at 606. Preliminary questions of law are subject to de novo review. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

As a general rule, evidence of prior bad acts cannot be admitted to establish the propensity to commit such acts. See *People v Galloway*, 335 Mich App 629, 637; 967 NW2d 908 (2020). A statutory exception in MCL 768.27b, however, allows the admission of evidence of prior domestic violence or sexual assault to demonstrate a defendant's character or propensity to commit the same act. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010) (addressing the pre-amendment version of the statute, which did not include "sexual assault" language). According to MCL 768.27b(1), in a case where the defendant is accused of an offense involving "sexual assault," "evidence of the defendant's commission of other acts of . . . sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under" MRE 403.

Significantly, defendant explicitly told the trial court that he did not object to the testimony of three of the six other-acts witnesses who testified at the trial. Defendant's approval of the trial

court's admission of testimony from those witnesses extinguishes any claim of error with respect to the trial court's ruling. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (express approval of a jury instruction waives any objection defendant may have to instruction); *People v Fetterley*, 229 Mich App 511, 519, 520; 583 NW2d 199 (1998) (defendant "expressly acquiesced" in the trial court's decision by stating he did not object to the decision). Thus, we need not address the propriety of the admission of testimony from those three witnesses.

With regard to the other three witnesses who provided other-acts testimony, defendant insists that their testimony was irrelevant because many of the acts took place more than a decade before defendant's 2021 trial and did not lead to police investigations or criminal charges. The language of MCL 768.27b(4) imposes special restrictions upon evidence "of an act occurring more than 10 years before the charged offense[,]" but the "charged offense" in this case took place in 2010. The three witnesses to whom defendant objected all testified about events that occurred within 10 years of 2010.[2] Therefore, MCL 768.27b(1) enabled all three of them to testify about the sexual assaults they had suffered at the hands of defendant, and nothing in MCL 768.27b(4) placed any restrictions upon their ability to testify about those events.

Defendant contends that even if the other-acts evidence was relevant, the trial court should have excluded it because its probative value was substantially outweighed by the danger of unfair prejudice. The language of MCL 768.27b reflects the Legislature's intent to allow prior-bad-acts evidence to be introduced as long as it is not excludable under MRE 403. *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011). Under MRE 403, relevant evidence is inadmissible only "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence cannot be regarded as unfairly prejudicial merely because it damages a defendant's case. "Any relevant testimony will be damaging to some extent." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (quotation marks omitted), mod 450 Mich 1212 (1995). Unfair prejudice arises "where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Blackston*, 481 Mich at 462.

In this case, the other-acts evidence was relevant because it tended to show that it was more probable than not that the victim was telling the truth in describing the sexual assault by defendant, and whether the victim was telling the truth had significant probative value in determining whether defendant committed the charged crime of CSC-1. See *People v Lowrey*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355364); slip op at 9 (concluding that other-acts evidence was especially probative because it showed defendant's pattern of prior abuse and "that he did not take 'no' for an answer"). Here, the victim testified that defendant used his weight and one hand to pin her hands between their chests, freed his penis with his other hand, used his knees to separate her legs, and then penetrated her vagina with his penis. Similarly, each of the six women who testified

---

[2] The ten other-acts witnesses initially identified by the prosecutor described incidents within the time frame of 2005 through 2017. In other words, not a single incident involved "an act occurring more than 10 years before the charged offense[,]" as contemplated by MCL 768.27b(4).

about defendant's prior sexual assaults stated that defendant shoved her onto a surface—a bed, a floor, a couch, a wall—used his weight to hold her, and used one hand to pin her hands or arms or cover her mouth while using his other hand to pull down her pants or shorts and accomplish sexual penetration. The similarities among the sexual assaults described by the other-acts witnesses and the sexual assault described by the victim made the likelihood of defendant's behavior toward the victim more probable, so the other-acts evidence was highly probative of the victim's credibility and, thus, of whether defendant committed the charged crime. On this record, we cannot conclude that the danger of unfair prejudice substantially outweighed the probative value of the other-acts evidence.

Beyond that, any potential prejudice flowing from the admission of the other-acts evidence was minimized by the trial court's limiting instructions to the jury. See *People v Wright*, 161 Mich App 682, 687-688; 411 NW2d 826 (1987). After the first two other-acts witnesses testified, on its own initiative, and again in the agreed-upon final instructions to the jury, the trial court provided the following instruction:

> You've heard testimony that was introduced to show that the defendant has engaged in improper sexual conduct for which the defendant is not on trial.
>
> I'm referring now to the last couple of witnesses.
>
> If you believe this evidence you must be very careful to consider it for only one limited purpose, that is to help you judge the believability of testimony of [the victim] regarding the act for which the defendant is now on trial. You must not consider this evidence for any other purposes. For example, you must not decide that it shows that the defendant is a bad person or that the defendant is likely to commit crimes.
>
> You must not convict the defendant here because you think he is guilty of other bad conduct.[3]

"Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Consequently, we conclude that the other-acts evidence was relevant and highly probative, its probative value was not substantially outweighed by unfair prejudice, and any potential prejudice to defendant was minimized by the limiting instructions that the trial court gave to the jury. Because that evidence was admissible, the trial court did not abuse its discretion when it admitted that evidence.

---

[3] In its final instructions, the trial court did not include the sentence "I'm referring now to the last couple of witnesses." Additionally, the trial court used the word "evidence" in the first sentence instead of "testimony," added the words "in this matter" at the end of both the first and second sentences, and used the word "he" in the final sentence in place of "the defendant." In all other respects, the instructions were identical.

## B. PROSECUTORIAL VOUCHING

Defendant next accuses the prosecution of committing misconduct by improperly vouching for the victim by asserting that she was a "truth teller" who was "speaking her truth," and that she was "capable of telling the truth and that's what she did." Defendant characterizes those remarks as highly prejudicial comments that could not be cured with an instruction from the trial court, and so defendant insists that those remarks require reversal even though they drew no objection at trial. Alternatively, defendant claims that his trial attorney was constitutionally ineffective for failing to object to the prosecutor's comments during rebuttal argument. Because the error was unpreserved, we simply must decide whether the claimed error amounted to plain error that affected defendant's substantial rights. See *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). An error affected substantial rights if it "affected the outcome of the proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A prosecutor cannot vouch for the credibility of a witness by implying that the prosecutor has some special knowledge of the witness's truthfulness. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). "A prosecutor may, however, argue from the facts that a witness is credible[.]" *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). A prosecutor may comment on his or her "own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455. In this case, the prosecutor's statements about the victim's credibility did not imply that she had any special knowledge that the victim was testifying truthfully. See *id*. Instead, the prosecutor argued that, based upon the evidence, the victim was credible. See *Howard*, 226 Mich App at 548. Defendant's guilt depended upon whether the jury believed the victim's testimony, making it appropriate for the prosecutor to offer comments on the victim's credibility during closing argument. See *Thomas*, 260 Mich App at 455. Therefore, under these circumstances, the prosecutor did not improperly vouch for the victim's credibility.

Even when a prosecutor's remarks are improper, they do not require reversal if they address issues raised by defense counsel. See *United States v Young*, 470 US 1, 11-13; 105 S Ct 1038; 84 L Ed 2d 1 (1985) (courts must weigh the prosecutor's remarks against the defense's opening salvo, and, if the prosecutor's remarks did no more than respond to right the scale, the comments will not warrant reversal). In analyzing whether an invited response mandates reversal, we must consider the conduct that prompted the prosecutorial response and the proportionality of that response. See *id*.; *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977); *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Considered in context, the prosecutor's comments referring to the victim as a "truth teller," stating that the victim was "speaking her truth," and saying that the victim was "capable of telling the truth and that's what she did" were reasonable responses to defendant's closing argument.

Defense counsel observed during closing argument that the victim identified two men other than defendant who might have been the father of her daughter. In rebuttal, the prosecutor argued that, although testing of other potential fathers was irrelevant, defendant "would have you believe that somehow it bears on her credibility. I'm still trying to figure that out. Because really where I get to with it is exactly the opposite. Exactly the opposite. It doesn't make her a liar. It quite frankly proves that she's a truth teller."

Addressing defense counsel's implication that the victim's consensual sexual contact with defendant in 2015 somehow meant that the sexual encounter in 2010 was not rape, the prosecutor explained that "[w]hat the subsequent act tells you, again contrary to what they would have you believe, is not that she's lying about the rape but that she's a truth teller." The prosecutor further noted that the incident illustrated that the victim understood the difference between consensual and nonconsensual sex, which "shows you that she's capable of telling the truth and that's what she did. It shows exactly the opposite of what they would have you believe."

In response to defense counsel's insinuation that the victim did not claim that defendant raped her until a custody dispute arose in 2015, the prosecutor referred to a notation from 2010 in a Department of Health and Human Services's (DHHS) file indicating that the victim had told the DHHS in 2010 that she could not name one potential father of her child because she was raped at a party. The prosecutor continued: "What does she have to gain? They cannot get, get past that. She's doing nothin' more than speaking her truth one more time to somebody . . . ."

All of these quotations show that the prosecutor's references to the victim as a "truth teller," as someone capable of telling the truth, and as someone who was speaking her truth were responses to defense counsel's implication that the victim was not telling the truth when she contended that defendant raped her in 2010. The prosecutor related her comments to assertions and insinuations from defense counsel during closing argument, disputed defense counsel's inferences, and offered the jury a different interpretation of the facts. Each challenged statement was responsive in nature and addressed the issue of credibility that defense counsel raised during his closing argument, so the prosecutor did not commit prosecutorial misconduct. And because the prosecutor's statements responded to defense counsel's argument and did not constitute prosecutorial misconduct, defense counsel did not render constitutionally ineffective assistance by failing to object to the challenged statements. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) (defense counsel is not required to advocate for meritless positions).

## C. SENTENCING

Defendant's final argument concerns the sentence that he received. Specifically, defendant argues that the trial court erred in imposing a sentence above the applicable sentencing-guidelines range without justifying the extent of the upward departure as proportionate to the circumstances surrounding the offense and the offender. We agree that the trial court did not provide a sufficient explanation for either its decision to depart from the sentencing-guidelines range or for the extent of that departure, so we shall remand the case to the trial court for a resentencing hearing where the trial court can offer explanations for the decision to depart and for the extent of a departure.

This Court reviews whether a trial court's sentence was proportionate to the offender and the offense for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A trial court abuses its discretion when it imposes a sentence that is disproportionate to the seriousness of the matter involving the offense and the offender. *Id*. at 472-475. We review a sentence that departs from the sentencing-guidelines range for reasonableness. *Id*. A sentence is reasonable if it adheres to the principle of proportionality. *Id*. at 474. In determining whether an upward-departure sentence is more proportionate than a sentence within the guidelines, courts must weigh "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate

weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted). The relevant factors not considered by the guidelines may include "the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019).

A trial court must articulate reasons supporting its decision to impose a sentence outside the guidelines range and the extent of its departure from the guidelines range. See *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). "[T]he trial court's justification must be sufficient to allow for effective appellate review." *Id*. (quotation marks omitted). "A sentence cannot be upheld when the connection between the reasons given for the departure and the extent of the departure is unclear." *Id*. "[I]f it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified." *Id*. If we determine that "[the] trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of its departure sentence imposed," we must remand to the trial court for resentencing. *Steanhouse*, 500 Mich at 476.

Here, defendant was convicted of CSC-1, a felony punishable by imprisonment for life or for any term of years. See MCL 750.520b(2)(a). Defendant's prior record variables (PRV) score was 42 points and his offense variables (OV) score was 65 points, which placed him at PRV Level D and OV Level IV. See MCL 777.62; MCL 777.16y (classifying CSC-1 as a Class A felony). Thus, the recommended sentencing guidelines minimum sentence was 126 to 210 months ($10^1/_2$ to $17^1/_2$ years). See MCL 777.62. The trial court sentenced defendant to a minimum sentence of 420 months' imprisonment (35 years), an upward departure of $17^1/_2$ years that doubled the longest minimum sentence recommended by the sentencing guidelines.

In explaining its sentence, the trial court stated that it considered the "punishment aspect," "the rehabilitation prospects in terms of the protection of society," and the "sentencing guidelines" when fashioning an individualized sentence for defendant. The trial court recounted the basic facts of the crime and reviewed defendant's criminal history, including the personal protection orders issued against him in 2009, 2011, 2016, and 2017. Although the guidelines called for a minimum sentence of 126 to 210 months, the trial court concluded that the "guidelines [did] not adequately consider the situation that's before the court." The trial court did not identify any OVs that did not properly account for the seriousness of the offense or the background of the offender. Instead, the trial court appeared to rely on factors not addressed by the guidelines, stating that the sentencing guidelines did not adequately consider the following: (1) the number of women that defendant had sexually assaulted; (2) the fact that defendant victimized young girls; (3) the lifelong physical and mental problems defendant's actions caused, and (4) defendant's long history of sexual assault. The court further explained that, in its opinion, defendant should never be allowed freedom to prey on women and that the court was convinced that if defendant were "out and about in society that we will have more victimization."

The trial court's decision to depart upward seems to flow from the circumstances involving the offender more than those involving the offense. Although the trial court did not make a finding that defendant committed the sexual assaults described by the other-acts witnesses, it is clear from the trial court's stated reasons for the departure sentence that the testimony of other-acts witnesses factored into the court's sentencing decision. That defendant assaulted several women and caused

long-lasting psychological injury is supported by the record. It is also clear that the trial court had a dim view of the likelihood of defendant's rehabilitation. But the record does not provide support for the insinuation that defendant targets young girls. The prosecution contends that defendant's "propensity to commit future sexual assaults against children was a valid reason for a significant departure sentence." But that contention mischaracterizes the record. As defense counsel pointed out at the sentencing hearing, defendant's sexual assault of minors occurred when he himself was a minor. There is no evidence that defendant preyed upon children as an adult or that he would do so in the future.

Further, the trial court did not clearly explain why defendant's long history of sexual abuse was not adequately taken into account in scoring defendant's PRVs. In *People v Barnes*, 332 Mich App 494, 506; 957 NW2d 62 (2020), the trial court explained that OV 13 (continuing pattern of criminal behavior) "did not differentiate between heinous felonies like CSC-1 and other felonious acts like home invasion." Here, in contrast, we cannot tell whether the trial court's reasoning was similar to that in *Barnes*, or whether the statement reflected the court's view of defendant's chances at rehabilitation. What we can tell is that the sentence substantially exceeds the prescribed range under the sentencing guidelines. Defendant's sentence is twice the maximum minimum sentence of 210 months under the applicable sentencing-guidelines range. But one reason for the sentence that the trial court gave is unsupported by the record and another reason is unclear. Moreover, the trial court left this Court to speculate about how the extent of the departure was proportionate under the circumstances. Although a 17$\frac{1}{2}$-year departure is truly remarkable, it may be warranted under the existing facts, but we ought not reach that conclusion in the first instance on appeal. See *Smith*, 482 Mich at 304. Instead, we must permit the trial court to articulate why the sentence it ultimately imposes is appropriate. See *id.* Thus, we shall remand this case to the trial court for resentencing to allow that court to explain the reasons for an upward departure and the extent of the departure.[4]

Defendant's CSC-1 conviction is affirmed, and the case is remanded for resentencing in a manner consistent with this opinion. We shall retain jurisdiction.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ Christopher P. Yates

---

[4] At oral argument, the prosecution seemed to suggest that any judge could resentence defendant. Our Supreme Court has ruled, however, that the resentencing hearing must be conducted by the trial judge if that judge "is reasonably available." *People v Clemons*, 407 Mich 939; 291 NW2d 927 (1979). Of course, a different judge may conduct the resentencing hearing if the trial judge is no longer "reasonably available" to conduct that hearing. See *People v Van Auker (After Remand)*, 132 Mich App 394, 399; 347 NW2d 466 (1984), rev'd in part on other grounds 419 Mich 918; 354 NW2d 258 (1984).

# Court of Appeals, State of Michigan

# ORDER

People of MI v Brad Allen Risner

Docket No.  359368

LC No.  20-003135-FC

Kathleen Jansen
Presiding Judge

James Robert Redford

Christopher P. Yates
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 63 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded.  As stated in the accompanying opinion, we remand this case to the trial court for resentencing where the trial court can explain the grounds for departure and the reasons for the extent of the departure.  The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 16, 2023
Date

_____
Chief Clerk